## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BOMBARDIER RECREATIONAL PRODUCTS INC. AND BRP U.S. INC., | Civil File No. 12-cv-2706 (MJD/LIB) |
| Plaintiffs, | **[REDACTED] ARCTIC CAT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DEPOSITION AND INSPECTION DATES, RECONVENING OF BRP RULE 30(B)(6) DEPOSITIONS, A COMPLETE PRIVILEGE LOG, ADDITIONAL ESI AND DOCUMENT PRODUCTION, AND CAD FILES** |
| v. | |
| ARCTIC CAT INC. AND ARCTIC CAT SALES INC., | |
| Defendants. | |

## INTRODUCTION

The plaintiffs, Bombardier Recreational Products Inc. and BRP U.S. Inc. (collectively, "BRP") , have alleged over $100 million in damages against Arctic Cat, yet continue to exhibit a lack of cooperation and a lack of sufficient effort to permit Arctic Cat to obtain information critical to defend itself in this case.

- BRP has precluded Arctic Cat from obtaining information about BRP's destruction of documents highly relevant to Arctic Cat's defenses in this case.

- Although Arctic Cat has been waiting since March for deposition dates, BRP has not provided a single deposition date in over a month in this case.

- BRP has not provided a date for Arctic Cat to inspect Euclid or Arctic Cat snowmobiles at BRP—a request Arctic Cat made in November 2012.

- In the few depositions of BRP witnesses that BRP has allowed to move forward, witnesses have been unprepared and subject to improper instructions by counsel for BRP.

Additionally, BRP generally continues to fail to engage in cooperative and efficient discovery.  BRP's privilege log suffers serious deficiencies, including multiple entries that do not even include a single reference to an attorney.  And almost a year after Arctic Cat has requested relevant documents related to the Bain acquisition of BRP, Arctic Cat has seen approximately 23 documents related to Bain—most of which are irrelevant to the core issue Arctic Cat seeks to understand, that is, Bain's involvement with and interest in the intellectual property at issue around the time of Bain's acquisition.

Arctic Cat respectfully requests that the Court:

- compel deposition dates certain for the depositions of Robert Handfield, Peter Watson, Jerome Wubbolts, Anne-Marie Dion, Jean-Guy Talbot, Jean-Yves Leblanc, Jose Boisjoli, Jonathan Cutler, and any outstanding Rule 30(b)(6) designees within seven days of the Court's Order;

- compel BRP to provide a date certain for the inspection of Euclid and Arctic Cat snowmobiles at BRP's facilities;

- compel BRP to pay Arctic Cat's costs for returning to take the deposition of Rule 30(b)(6) designee Julie Morel and to reconvene, and pay Arctic Cat's costs for returning to take, the Rule 30(b)(6) depositions for Topics 1(a), 1(b), and 2 of Arctic Cat's Amended Third Notice of Rule 30(b)(6) Deposition;

- compel BRP to serve a complete privilege log, remedying all the deficiencies identified above;

- compel BRP to produce additional ESI documents, including those from the custodial files of Mr. Boisjoli and Mr. Leblanc;

- order BRP to produce all documents related to Bain within two days of the entry of an Order on the instant motion; and

- order BRP to produce, via hard drive(s), CAD files of all BRP snowmobiles that BRP asserts embodies any part of the Asserted Patents and any competitors' snowmobiles, including Arctic Cat, Polaris, and Yamaha.

## **BACKGROUND**

### I.     **BRP Witness Deposition and Inspection Dates**

#### A.     **BRP's Failure to Provide Witness Deposition Dates**

Beginning in March 2014, Arctic Cat has noticed the depositions of Robert Handfield, Peter Watson, Jerome Wubbolts, Anne-Marie Dion, Jean-Guy Talbot, Jean-Yves Leblanc, and Jose Boisjoli, in addition to multiple Rule 30(b)(6) depositions. (Daley Decl. ¶ 3.)   Additionally, BRP initially informed Arctic Cat that it would not produce Jonathan Cutler for a deposition and that Arctic Cat would have to seek the issuance of a letter rogatory to depose him.   (Daley Decl. ¶ 4.)   Subsequently, BRP agreed to produce Mr. Cutler but still has not provided a date certain for his deposition. (*Id.*)   As of the date of the filing of this memorandum, Arctic Cat does not have dates certain for the depositions of any of these witnesses except for one designee of one part of one Rule 30(b)(6) notice, which is scheduled for August 27, 2014.   (Daley Decl. ¶ 3.)

With respect to the deposition of Mr. Cutler, BRP has stated that he will be available the last week of August.   (Daley Decl. Ex. 1.)   But BRP still has refused to

3

provide a date certain for that deposition.  (Daley Decl. ¶ 4.)  This is despite cooperating in the Canadian case and agreeing to produce Mr. Cutler on August 20, 2014.  (*Id.*)  Additionally, BRP has refused to produce Mr. Boisjoli for a deposition on the grounds that Arctic Cat is seeking his deposition merely because he is the CEO.  (Daley Decl. ¶ 5, Ex. 1.)  Finally, with respect to Mr. Handfield and Mr. Watson, BRP forced Arctic Cat to obtain and serve letters rogatory. (Daley Decl. ¶ 6.)  Once Arctic Cat received permission to do so, BRP has refused to cooperate in securing dates for Mr. Handfield or Mr. Watson, despite multiple requests to do so.  (*Id.*)  BRP continues to take the position that they are "independent" witnesses, and that BRP cannot agree to produce them without Arctic Cat's cooperation to "narrow" the scope.  (Daley Decl. Ex. 1.)  With respect to the remaining witnesses, BRP has continued to claim that it is "investigating" dates but refused to provide them.  (*See, e.g.*, Daley Decl. Ex. 1.)

### B.     BRP's Failure to Provide Inspection Dates

On November 21, 2012, Arctic Cat served its First Request for Production of Documents and Things.  In Document Request 34, Arctic Cat requested: "All Accused Products and/or Arctic Cat snowmobiles, or parts or components thereof, in BRP's possession, custody or control."  (Daley Decl. Ex. 5, at p. 9.)  In its Responses, BRP stated: "Subject to and without waiving the foregoing general objections, BRP will produce for inspection the requests (sic) things."  (Daley Decl. Ex. 6, at p. 21.)

In Document Request 67, Arctic Cat requested "[a]ll computer-aided design ("CAD") tools, systems, software and databases sued by or on behalf of BRP for any BRP Products."  (Daley Decl. Ex. 5, at p. 13.)  In its Responses, BRP stated: "[s]ubject

to and without waiving the foregoing specific and general objections, BRP will make available to Arctic Cat for inspection responsive CAD tools, systems, software and databases used by or on behalf of BRP that are properly discoverable under Fed. R. Civ. P. 26." (Daley Decl. Ex. 6, at p. 36.)

Since shortly after receive BRP's Responses, Arctic Cat has been requesting a date to inspect the Euclid system, the CAD system that BRP used at the time it was developing the REV platform in the late 1990's and early 2000's. (Daley Decl. ¶ 7.) BRP has yet to provide a date for the inspection despite multiple requests by Arctic Cat to do so. (*Id.*)

## II.   BRP's Failure to Produce Julie Morel as a Rule 30(b)(6) Deposition as Previously Agreed, Despite Her Availability

BRP designated Julie Morel as a Rule 30(b)(6) designee for Topic 2 of Arctic Cat's Rule 30(b)(6) deposition notice. (Daley Decl. ¶ 8.) Topic 2 called for an examination on "BRP's efforts to collect and produce documents and ESI in this matter." (Daley Decl. Ex. 33.) BRP initially had agreed to produce Ms. Morel on July 17, 2014, for that portion of the Rule 30(b)(6) deposition. (Daley Decl. ¶ 8.) On July 3, 2014, however, BRP notified Arctic Cat that it would be producing two witnesses to testify regarding Topic 2, an unidentified witness on July 17, 2014, and Julie Morel on August 27, 2014. (Daley Decl. Ex. 7). When Arctic Cat asked for clarification, BRP stated that they would be producing a witness to testify regarding the collection of ESI on July 17, 2014, and would be producing Julie Morel to testify regarding the remaining issues (presumably collection of paper documents) on August 27, 2014. (Daley Decl. Ex. 11.)

On July 10, 2014, BRP informed Arctic Cat that the July 17 witness designated to testify regarding the collection of ESI would be Anthony Merlino from Document Technologies, Inc. (Daley Decl. Ex. 12.)  Then, on July 16, 2014, BRP changed their position, stating that both Mr. Merlino and Ms. Morel would be testifying regarding BRP's efforts to collect ESI.  (Daley Decl. Ex. 13.)

Counsel for Arctic Cat flew to Montreal to take the Rule 30(b)(6) deposition and took the deposition of Dennis Ervin, the other Rule 30(b)(6) designee for Topic 2. (Daley Decl. ¶ 9.)  When counsel for Arctic Cat arrived at Mr. Ervin's deposition, Ms. Morel was present and sat in on the deposition, despite BRP having previously informed counsel for Arctic Cat that Ms. Morel was unavailable that day.  (*Id.*)  BRP refused to allow counsel for Arctic Cat to depose Ms. Morel.  (*Id.*)  When subsequently pressed as to why BRP had informed Arctic Cat that Ms. Morel was unavailable that day and why Arctic Cat could not depose her when she was present at the deposition, counsel for BRP informed counsel for Arctic Cat that Ms. Morel was not prepared to be deposed that day. (*Id.*)  As a result, counsel for Arctic Cat will have to incur the expenses to fly back up to Montreal to depose Ms. Morel.

## III.   BRP's 30(b)(6) Witnesses Were Not Prepared to Testify Regarding their Assigned Topics.

### A.   BRP Did Not Produce a Prepared Witness on Topics 1(a), 1(b), 1(d) and 2 of Arctic Cat's Amended Third Notice of Rule 30(b)(6) Deposition.

On July 15, 2014, BRP produced Dennis Ervin to testify regarding topics 1 and 2 of Arctic Cat's Amended Third Notice of Rule 30(b)(6) Deposition.  Those topics were

related to BRP's electronically stored information (ESI) systems and BRP's retention or destruction of documents related to the lawsuit.  (Daley Decl. Ex. 8.)

### 1.    Mr. Ervin Was Not Prepared to Testify on Topic 1(a).

Topic 1(a) sought information regarding the following:  "[t]he identity of BRP's ESI systems, their types and categories of information stored, and BRP's practices, procedures and policies regarding creating, storing and modifying ESI BRP's ESI systems from 1996 until present."  (Daley Decl. Ex. 8.)  When asked to identify the systems BRP has used since 1996, ██████████████████████████████████ ████████████████████████████████ (Daley Decl. Ex. 9, Ervin Dep. 40:3-12.[1])

████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██

(*Id.*, 40:13-15.) ████████████████████████████████████████████ the ESI Stipulation filed with the Court on February 8, 2013, in which the parties agreed to exchange such information.  (Doc. 71 at ¶ 4) ("Each party shall provide a list identifying (a) all shared electronic data sources and (b) all custodians of individual electronic data sources that it has searched for responsive ESI.").)

### 2.    Mr. Ervin was not Prepared to Testify on Topic 1(b).

Topic (b) sought information about "BRP's preservation and/or back-up of ESI, including BRP policies and practices regarding preservation of ESI, its efforts to preserve ESI from 1996 until present, and the content and location of preserved ESI from 1996

---

[1] The Deposition of Mr. Ervin is attached to the Deposition of Annamarie A. Daley as Exhibit 9.

until present." (Daley Decl. Ex. 8.)  Mr. Ervin was not familiar with BRP's policies regarding the preservation of ESI. 

(Daley Decl. Ex. 9, Ervin Dep. 114:4-116:20 (

).)

(*Id.*, 77:22-78:21.)

### 3.     Mr. Ervin was not Prepared to Testify on Topic 1(d).

Topic 1(d) sought testimony regarding:  "BRP's computer aided drawing (CAD) systems, including its Euclid system, and the retention or loss of computer drawings associated with any changes in CAD systems."  (Daley Decl. Ex. 8.)  Mr. Ervin knew very little about BRP's Euclid system.

(Daley Decl. Ex. 9, Ervin Dep. 102:4-15.)

(*Id.* 45:22-46:8; 47:15-20.)

(*Id.*, 49:2-8.)

With respect to the second half of the topic – the retention or loss of computer drawings on the CAD systems – Mr. Ervin likewise knew little.



(Daley Decl. Ex. 9, Ervin Dep. 49:15-25; 98:24-99:3.) (*Id.*, 55:2-7.) (*Id.*, 99:11-16.) (*Id.*, 75:2-14.) (*Id.*, 67:6-14.)

#### 4.     Mr. Ervin Was Not Prepared to Testify on Topic 2.

Topic 2 sought testimony regarding:  "BRP's retention and/or destruction of documents regarding snowmobile frames and/or snowmobile rider positioning from and after January 1, 1996."  (Daley Decl. Ex. 8.) (Daley Decl. Ex. 9, Ervin Dep. 97:1-19; 106:16-107:5; 109:2-13.) (*Id.*, 111:4-112:19.) (*Id.*, 112:10-113:7; 127:23-128:7.)

Counsel for Arctic Cat noted on the record that Mr. Ervin was not prepared to testify on Topics 1(a), 1(b), 1(d) and 2 and stated that Arctic Cat would be asking for costs and fees to reconvene the deposition at a time when the Witness has been instructed to answer the questions and prepared to address the questions regarding the topics.  (*Id.* 131:8-15.)

**B.**    **BRP Did Not Produce a Witness Prepared to Testify Regarding Topic 2 of Arctic Cat's Fourth Notice of Rule 30(b)(6) Deposition of Bombardier Recreational Products Inc. and BRP US Inc. and Counsel for BRP Prevented the Witness from Answering Questions that Sought Information Relevant to the Topic.**

In Topic 2, Arctic Cat sought information regarding "BRP's efforts to collect and produce documents and ESI in this matter."  (Daley Decl. Ex. 10 (Fourth Notice of Deposition.)  BRP originally designated Julie Morel, BRP's in-house counsel, to testify regarding Topic 2 on July 17, 2014.  As previously explained, BRP created a great deal of confusion as to whether Ms. Morel would be testifying and about what she would be testifying.  Ultimately, BRP notified Arctic Cat that both Mr. Merlino and Ms. Morel would be testifying regarding BRP's efforts to collect ESI.  (Daley Decl. Ex. 13.)[2]

Mr. Merlino could not answer a number of questions regarding BRP's efforts to collect and produce ESI.  ███████████████████████████████████████

████████████████████  (Daley Decl. Ex. 14, Merlino Dep. 84:14-86:3; 88:1-11.)[3]  ███████

---

[2] The cost to take the depositions of two witnesses on separate days on this topic is exceedingly high.  Counsel for both parties must fly to Montreal twice.  The fees for the videographer and court reporter for one day are over $3,000.00.  (Daley Decl. Ex. 15.)  When BRP splits up deposition topics as it has done, it multiples the cost to Arctic Cat.

[3] The deposition transcript of Anthony John Merlino is attached to the Declaration of Annamarie A. Daley at Exhibit 14.



(*Id.*, 49:9-13.)

(*Id.*, 52:24-53:8.)

[black]⁴ (*Id.*, 55:1-24.)

Further, counsel for BRP instructed Mr. Merlino not to answer questions that fell

within the scope of the topic.

(*Id.*, 82:2-84:1.)

(*Id.*, 26:17-

27:1.)

(*Id.*, 35:4-7.)

(*Id.*, 43:17-44:13.)

(*Id.*, 96:24-97:11.)

---

⁴ The parties agreed in the ESI Stipulation drafted by BRP counsel to exchange lists identifying "all custodians of individual electronic data sources that it has searched for responsive ESI." Arctic Cat searched the files of 123 custodians. (Daley Decl. Ex. 16.) By contrast, BRP searched the files of only 22 custodians. (Daley Decl. Ex. 17.).

███████████████████████████████████

████████ (*Id.*, 56:2-7.)  BRP counsel previously had insisted that Arctic Cat provide

such information to BRP regarding Arctic Cat's review of documents for privilege.

(Daley Decl. Ex. 18.)

## IV.   BRP's Privilege Log Deficiencies

On June 30, 2014 and July 2, 2014, BRP served its privilege log and supplemental

privilege log in this case.  (Daley Decl. Ex. 19.)  BRP apparently has taken the position

that many of the communications with engineer Steward Strickland are privileged.

(Daley Decl. ¶ 10.)  BRP has not agreed to produce Mr. Strickland's communications.

(*Id.*)

Additionally, in a meet and confer agenda dated July 9, 2014, Arctic Cat identified

other deficiencies in BRP's privilege log.  (Daley Decl. Ex. 20.)  During that meet and

confer, BRP agreed that it needed to amend its privilege log to remedy certain

deficiencies.  (Daley Decl. ¶ 10.)  As of the parties' subsequent meet and confer on July

24, 2014, BRP had not amended its privilege log.  (*Id.*)  Arctic Cat again requested that

BRP serve an amended privilege log.  (*Id.*)  At the parties meet and confer on July 31,

2014, BRP again represented it would serve an amended privilege log.  (*Id.*)  As of the

date of this filing, BRP has not served an amended privilege log.  (*Id.*)

## V.   BRP's Document Production Deficiencies

### A.   BRP's Failure to Produce Documents from Bain

In August 2003, Bain Capital ("Bain") acquired a fifty percent ownership interest

in BRP.  *See* Christopher J. Chipello, *Bombardier to Sell Subsidiary to Group Led by*

*Bain Capital*, Wall St. J., Aug. 27, 2003.[5]  The remaining fifty percent was split between the Bombardier-Beaudoin family and pension fund manager Caisse de dépôt et placement du Québec ("Caisse").[6]  Consequently, since August 2003, Bain has had a major ownership interest in BRP.

Since its acquisition of BRP, Bain has played an active role in BRP's business. For example, four members of BRP's board of directors are associated with Bain.[7] Additionally, Bain appeared with BRP before the Board of Patent Appeals.  In June 2004, BRP appealed the decision of the patent examiner denying the claims contained in Patent Application No. 09/472,134 (the "'134 Application").   (*See* (Daley Decl. Ex. 21.) According to the Confirmation, the hearing was to be attended by an attorney from Ropes & Gray LLP, which represents Bain.  (*Id.*)  One of the patents at issue in this matter, United States Patent No. 7,213,669, issued May 8, 2007, entitled "Snowmobile Rider Positioning," is listed as a "[c]ontinuation-in-part" of the '134 Application.  (Daley Decl. Ex. 22.).

---

[5]  *Available at* http://online.wsj.com/article/0,,SB106198653325581800,00.html  (last visited August 4, 2014)

[6]  Nicolas Van Praet, *Ski-Doo Maker Quietly Revises Plan for IPO*, *available at* http://business.financialpost.com/2011/11/25/ski-doo-maker-quietly-revives-plan-for-ipo/ (last visited August 4, 2014).

[7]  The four individuals associated with Bain who sit on BRP's board of directors are: (1) Joshua Bekenstein, managing director at Bain Capital Investors, LLC; (2) Yvonne Hoa, operating partner at Bain Capital Partners, LLC; (3) Nicolas G. Nomicos, managing director at Sankaty Advisors, LLC, the credit arm of Bain Capital Partners, LLC; and (4) Joseph   Robins,   principal   at   Bain   Capital   Partners,   LLC.    *See* http://investors.brp.com/phoenix.zhtml?c=251742&p=irol-govboard (last visited, Aug. 4, 2014).

On August 28, 2013, Arctic Cat filed its Motion to Compel BRP to Conduct Certain ESI Discovery Related to Its Owner Bain Capital (the "Bain ESI Motion"), (Doc. No. 123.)  Through the Bain ESI Motion, Arctic Cat sought an order compelling BRP to conduct ESI discovery related to Bain.  Shortly after Arctic Cat filed the Bain ESI Motion, BRP's counsel agreed to conduct ESI discovery related to Bain.  Based on BRP's counsel's representation that it would search for, and produce, documents related to Bain, on August 29, 2013, Arctic Cat withdrew the Bain ESI Motion.  (*See id.*)

Although BRP promised to produce documents related to Bain, it did not do so.[8] Although BRP has agreed to search for and produce documents regarding Bain, and Bain's counsel has insisted that BRP does in fact possess these documents, to date, BRP has produced only *twenty-three documents* containing the word "Bain."  (Daley Decl. ¶ 11.)  Of these documents, most are emails dated between 2011 and 2013.  (*Id.*).  Although a few of the documents are press releases related to Bain's 2003 acquisition of BRP, BRP has produced no due diligence materials or any documents detailing the 2003 transaction.  (*Id.* ¶ 12).

## B.    BRP's Failure to Produce CAD files.

Arctic Cat has requested that BRP produce its CAD files of all BRP snowmobiles that BRP asserts embodies any part of the Asserted Patents and any competitors' snowmobiles, including Arctic Cat, Polaris, and Yamaha.  Arctic Cat's request that BRP

---

[8] Arctic Cat has also subpoenaed Bain to obtain information related to its purchase of Bain stock, as well as any information related to BRP's REV snowmobile.  Over the course of negotiations with Bain, Bain's counsel has insisted that the information Arctic Cat seeks from Bain is available from BRP.  (*See* Daley Decl. ¶ 13.).

produce these CAD files has been pending since November 21, 2012; yet despite their clear relevance, BRP has yet to produce any of the requested CAD files.  BRP itself has previously filed a motion to compel Arctic Cat to produce CAD files, (*see* Doc. No. 188), and this Court concluded that the relevance of the CAD files was "obvious."  (Doc. No. 260, at 20).

Since Arctic Cat's request for production in November 2012, BRP's counsel has refused to produce BRP's CAD files until Arctic Cat produced its own CAD files. (Daley Decl. ¶¶ 14-15.)  Arctic Cat produced its CAD files to BRP in June. (*Id.*)  Yet despite Arctic Cat's production, BRP has refused to either provide a date on which Arctic Cat could inspect BRP's CAD files or produced the CAD files directly to Arctic Cat.  (*Id.* ¶¶ 14-15).  Each time Arctic Cat requests production of BRP's CAD files, BRP's counsel either fails to respond to Arctic Cat's requests, or offers a date for Arctic Cat to inspect BRP's CAD files only subsequently to withdraw the date.  (*See*, *e.g.*, *id.* Ex. 18 ("Counsel for Arctic Cat requested an inspection of Euclid around the same dates as depositions of BRP witnesses in Canada.  BRP's counsel will look into the matter.")).

## ARGUMENT

A motion to compel is appropriate when a party fails to produce relevant, non-privileged documents requested pursuant to Rule 34.  Fed. R. Civ. P. 37(a)(3)(B)(iv), (a)(4).  The scope of discovery under Fed. R. Civ. P. 26(b)(1) is broad.  Discovery may be obtained as to any unprivileged matter "relevant to the claim or defense of any party...."  *Id.*  Discovery may be sought of relevant information not admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible

evidence." *Id.* The broad scope of permissible discovery encompasses any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Discovery is not limited to the merits of a case, "for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Id.*

## I. The Court Should Compel BRP to Provide Dates Certain for Certain Discovery Activities.

### A. Deposition Dates

#### 1. The Court should compel BRP to provide all outstanding deposition dates certain within seven days of the Court's Order.

In both this case and the *Arctic Cat v. BRP* case, Arctic Cat has been requesting deposition dates to no avail. (*See, e.g.*, Daley Decl. Ex. 23.) BRP's conduct with respect to scheduling depositions of its own, and of Arctic Cat witnesses, is consistent with its general lack of cooperation and effort to enable the parties to move this case forward. The parties are now approaching the end of fact discovery, BRP is in the midst its annual three-week "shutdown," and BRP still has not provided dates for multiple depositions. On July 14, 2014, Arctic Cat requested that BRP confirm that BRP would not be providing deposition dates until BRP employees returned after the shutdown on August 11, 2014. (*Id.*) Counsel for BRP responded that BRP "continue[d] to investigate deposition dates for witnesses" despite the shut down. (Daley Decl. Ex. 24.) Despite "continu[ing] to investigate," it is now August 4, 2014, and BRP has not proposed one single additional date. (Daley Decl. ¶ 17.) In fact, the last time BRP proposed a

deposition date was in a July 3, 2014 email, in which BRP offered dates for Rule 30(b)(6) witnesses. (Daley Decl. Ex. 7.)  More than one month later, Arctic Cat's concerns that BRP would avoid providing deposition dates certain during the shutdown appear to be valid.

With respect to the deposition of Mr. Cutler, BRP has stated that he will be available the last week of August. (Daley Decl. Ex. 25.)   But BPR still has refused to provide a date certain for that deposition.  (Daley Decl. ¶¶ 3-4.)  Given the quantity of remaining depositions, inspections, and other discovery-related activities that need to take place over the next four weeks in both this case and the *Arctic Cat v. BRP* case, it is not enough at this point to simply provide Arctic Cat with a week in which Mr. Cutler's deposition might occur.

With respect to the deposition of Mr. Leblanc, BRP has simply declined to address Arctic Cat's requests.  For example, in a June 11 meet and confer agenda, Arctic Cat included the deposition of Mr. Leblanc, in his personal capacity, as an agenda topic. (Daley Decl. Ex. 26.)  In its "recap" of the June 11 meet and confer, BRP listed Mr. Leblanc as a Rule 30(b)(6) designee but did not address Arctic Cat's request to produce him as a witness.  (Daley Decl. Ex. 18.)  In any event, BRP has not produced Mr. Leblanc or proposed to produce him in either his personal capacity or as a Rule 30(b)(6) designee. (Daley Decl. ¶ 3.)  Yet, Mr. Leblanc's testimony is clearly relevant.  Mr. Leblanc filed a declaration with the United States Patent and Trademark Office.  (Daley Decl. Ex. 27.) Mr. Leblanc was also present at meetings discussing the design and production of the REV.  (*See e.g.*, Daley Decl. Ex. 28.)

**2.   The Court should compel BRP to produce Jose Boisjoli for a deposition.**

With respect to the deposition of Mr. Boisjoli, counsel for BRP has informed counsel for Arctic Cat that it will not produce Mr. Boisjoli on the ground that Arctic Cat is seeking the deposition merely because he is the CEO.  Under Fed. R. Civ. P. 30(a)(1), "[a] party may, by oral questions, depose any person, including a party, without leave of court."  And under Fed. R. Civ. P. 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

BRP's document production demonstrates that Mr. Boisjoli is a critical witness in this case.  As an initial matter, Mr. Boisjoli's name appears in over 1,400 documents produced by BRP in this case.  (Daley Decl. ¶ 5.)  For example, BRP produced a brochure for the REV revealing that Mr. Boisjoli, in his role as President of the Ski-Doo Division was instrumental in moving forward with the REV.  (Daley Decl. Ex. 29 (BRP00036919-25.))   In that document, Mr. Boisjoli is quoted discussing various attributes of the REV at issue here, including the following statement: "[W]e're positive anyone who rides this vehicle for a significant amount of time will see it redefines snowmobile ergonomics, technology, and performance." (*Id.*, at BRP00036920.)  BRP also produced minutes showing Mr. Boisjoli's presence at meetings regarding REV development. (*Id.*, Ex. 28 (BRP00019512-15).)  BRP produced documents showing that Mr. Boisjoli performed testing on the REV and compared it to Arctic Cat snowmobiles.

(*Id.*, Ex. 30 (BRP00006475-81).)

Significantly, BRP also produced a document in which Mr. Boisjoli expressed concerns about the REV after testing the REV against other manufacturer snowmobiles, including Arctic Cat, expressing concern that that the REV was not different enough from other snowmobiles on the market.[9]  (*Id.*, Ex. 31 (BRP00020241).)  This is in contrast to his statement in a subsequent video addressing the REV in which Mr. Boisjoli expressed his confidence in the REV:

> I became President of Seadoo Skidoo in 1998.  At that time, we had in our hand a prototype of a snowmobile called the REV.  The REV was totally changing the way to ride a snowmobile.  We had to meet a lot of challenges to make it work.  In 1999, we decided to launch a program, but it was not an easy decision to make.  In Vancouver, where there are a lot of people who know a lot about snowmobiles, many had doubts. I would say 50% were against it and 50% were saying let's do it.  These things happen when you have a game changing product in your hands.  There is risk, but rewards if you can make it work.  In 2003, we were ready and introduced the REV.  That year we gained a number one position snowmobile and have maintained it ever since.  Today, our worldwide market share is about 50%.  The REV was an incredible success.[10]

Given the quantity of relevant documents produced that identify Mr. Boisjoli, who was President of Ski-Doo during the relevant time period, Mr. Boisjoli is certain to possess knowledge that at the very least "appears reasonably calculated to lead to the discovery of admissible evidence."  BRP simply has no basis to withhold his testimony.

---

[9] This document was produced in French and was translated via "Google Translate." (Daley Decl. ¶ .)

[10] Video available at http://www.powersportsbusiness.com/top-stories/2014/06/24/jose-boisjoli-shares-rev-success-at-club-evinrude-video/.

Moreover, not only has BRP not provided dates for its witnesses, it continues to reject deposition dates proposed by Arctic Cat without providing other dates and to cancel the depositions of Arctic Cat witnesses.  (*see, e.g.*, Daley Decl. Ex. 32.)   For example, Arctic Cat had offered various dates for the depositions of Roger Skime, Andy Beavis, and Dale Hahn.  (Daley Decl. ¶ 18.)  Arctic Cat initially offered August 1, 2014, for the deposition of Andy Beavis; BRP rejected that date without providing an alternative.  (*Id.*)  Arctic Cat offered August 6, 2014, for the deposition of Andy Beavis; BRP rejected that date without providing an alternative.  (*Id.*)  Arctic Cat offered August 8, 2014, for the deposition of Dale Hahn; BRP rejected that date without providing an alternative.  (*Id.*)

On June 11, 2014, BRP had agreed to depose Roger Skime on August 5, 2014, only to cancel the date almost two months later on August 1, 2014.  (*Id.*) In the email cancelling the deposition of Mr. Skime, BRP also notified Arctic Cat it could not take the deposition of Mr. Beavis, informed Arctic Cat it would not be able to attend the deposition of third-party witness Steve Thorsen, scheduled for August 8, 2014, ordered Arctic Cat to send new dates without providing dates that BRP would be available. (Daley Decl. Ex. 32.)

Given the looming discovery deadline, BRP is going to have to be willing to take multiple depositions in the same week.  Indeed, BRP may have to be willing to take some depositions the same day.  BRP is employing four experienced attorneys in this case. Between the four of them, they should be able to complete discovery by the deadline this Court has imposed.  Arctic Cat respectfully requests that the Court compel BRP to

provide dates certain for the depositions of Robert Handfield, Peter Watson, Jonathan Cutler, Jean-Yves Leblanc, and Jose Boisjoli within at most seven days of the Court's Order.

### B.      Inspection Dates

In its Responses to Arctic Cat's First Request for Production of Documents, BRP agreed to produce for inspection "Accused Products and/or Arctic Cat snowmobiles, or parts or components thereof, in BRP's possession, custody or control." (Daley Decl. Ex., at p. 5; Ex., at p. 21.)  BRP has not yet provided a date certain for that inspection.  With less than four weeks left of fact discovery, BRP can no longer delay providing a date certain for the inspection.  Arctic Cat respectfully request the Court compel BRP to provide a date certain within at most seven days of the Court's Order.

In Document Request 67, Arctic Cat requested "[a]ll computer-aided design ("CAD") tools, systems, software and databases sued by or on behalf of BRP for any BRP Products." (Daley Decl. Ex. 5, at p. 13.)  In its Responses, BRP stated:  "[s]ubject to and without waiving the foregoing specific and general objections, BRP will make available to Arctic Cat for inspection responsive CAD tools, systems, software and databases used by or on behalf of BRP that are properly discoverable under Fed. R. Civ. P. 26.  (Daley Decl. Ex. 6, at p. 36.)  Since shortly after receive BRP's Responses, Arctic Cat has been requesting a date to inspect the Euclid system, the CAD system that BRP used at the time it was developing the REV platform in the late 1990's and early 2000's. (Daley Decl. ¶ 7.)  While BRP repeatedly states it will allow the inspection and identifies general time periods for that inspection, every time Arctic Cat accepts one of the

proposed dates, BRP states that that date no longer works or does not work.  (*Id.*) BRP must be compelled to allow the inspection.

## II.    The Court Should Compel BRP to Pay the Costs of Arctic Cat's Return to Montreal for the Deposition of Julie Morel.

Arctic Cat incurs a significant cost each time it flies to Montreal for depositions. During the week of July 17, 2014, counsel for Arctic Cat spent three days in Montreal to depose Rule 30(b)(6) designees and was informed that she would have to return to Montreal because Ms. Morel was unavailable during that week.  (Daley Decl. ¶ 9.) Yet, Ms. Morel showed up at the deposition of another Rule 30(b)(6) designee.  (*Id.*)  Federal Rule of Civil Procedure 37 permits the Court to order a party to pay reasonable expenses if a person designated under Rule 30(b)(6) fails to appear for that person's deposition. Fed. R. Civ. P. 37(d)(1)-(3).  Ms. Morel was present at the deposition, and BRP simply would not allow her to be deposed, after previously designating her as a Rule 30(b)(6) designee and representing that she would be available on July 17, 2014.  As a result, Arctic Cat now has to incur additional costs to return to Montreal to depose Ms. Morel. Arctic Cat respectfully requests that the Court order BRP to pay the costs for Arctic Cat's return trip to Montreal.

## III.    The Court Should Compel Both Mr. Ervin and Mr. Merlino to Appear for an Additional Rule 30(b)(6) Deposition to Answer Questions Regarding Topics on Which They Were Previously Unprepared and Follow-Up Questions.

Federal Rule of Civil Procedure 30(b)(6) requires a corporation to provide a 30(b)(6) witness who is prepared to testify regarding topics that are reasonably available to the organization:

> In its notice or subpoena, a party may name as the deponent, a public or private corporation, a partnership, an association, a government agency or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person is designated to testify. . . . The persons designated must testify about information known or reasonably available to the organization.

The designating party must make a "conscientious, good faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." *Dwelly v. Yamaha Motor Corp.*, 214 F.R.D. 537, 540 (D. Minn. 2003) (quoting *Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 639 (D. Kan. 1999). The obligation to prepare a 30(b)(6) witness extends beyond subject matter on which the witness has first-hand knowledge because the witness is providing testimony as to the knowledge of the corporation and must be properly prepared to do so. *Aviva Sports Inc. v. Fingerhut Direct Marketing, Inc.*, 09-CV-01091, Doc. 508 at 27 (D. Minn. Jan. 1, 2012) (citing *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996).

The *Aviva* court applied a three-part analysis to determining whether a 30(b)(6) witness was properly prepared: (1) did the deposing party adequately designate topics in advance to that the deposed party could adequately prepare a witness; (2) did the deposing party pose questions on the topics on which it is seeking relief; and (3) was the witness properly prepared to address the questions. *Id.*

An inadequate 30(b)(6) designation amounts to a refusal or failure to answer a deposition question under Federal Rule of Civil Procedure 37(a)(4).  *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (N.D.N.C. 1989).  When it becomes evident during the course of a deposition that a corporate designee lacks knowledge related to the deposition topics, a substitute must be provided.  *Algonquin Heights v. United States*, 97-582, 2008 WL 2019025, at *5 (Fed. Cl. Feb. 29, 2008) (citing *Marker*, 125 F.R.D. at 126).  "Among the other remedies, a Court can require the corporation to re-designate its witnesses and mandate their preparation for re-deposition at the corporation's expense." *Marker*, 125 F.R.D. at 126 (granting motion to compel further testimony and giving defendant the option to fly plaintiff's counsel, at defendant's expense, including compensation for travel time, or its headquarters in Pennsylvania or else produced the persons in Greensboro, North Carolina, for further deposition); *see also Arctic Cat Inc. v. Injection Research Specialists*, 210 F.R.D. 680, 683-84 (D. Minn. 2002) (plaintiff's designation of plainly unqualified 30(b)(6) witness warranted sanction of payment of some of defendant's costs); Fed. Rule Civ. P. 37(d)(3) (enumerating types of sanctions available for failure to respond to discovery).

## A.  Arctic Cat Noticed the Topics Well In Advance of the Depositions.

In this case, Arctic Cat noticed reasonably narrow topics in advance so that BRP should have been able to adequately prepare a witness.  Arctic Cat served the Amended Third Notice of Rule 30(b)(6) Deposition and Fourth Notice of Rule 30(b)(6) Deposition on May 15 and May 22 respectively.  (Daley Decl.  Exs. 8, 10.)  These topics were previously listed on Arctic Cat's Third Notice of Rule 30(b)(6) Deposition that was

served on June 14, 2013. (Daley Decl. Ex. 33.) The depositions of Messrs. Ervin and Merlino did not take place until July 15 and 17 respectively. The topics – common in most lawsuits – seek information related to BRP's ESI systems, BRP's retention or destruction of responsive documents and BRP's efforts to collect and produce documents in this case. BRP made no objections to the scope of the deposition topics and did not move for a protective order.

**B.  Arctic Cat Asked the Witnesses to Provide Answers to the Questions on Which it Seeks Relief in This Motion and the Witnesses Were Not Prepared to Do So.**

In this Motion, Arctic Cat seeks to re-depose, at BRP's expense, Mr. Ervin and Mr. Merlino on the subjects on which they could not provide information in their depositions. Arctic Cat posed a number of questions relating to the deposition topics that the witnesses could not answer. With respect to Mr. Ervin, Arctic Cat seeks to re-depose him on Topics 1(a), 1(b), 1(d) and 2 of the Amended Third Notice of Rule 30(b)(6) Deposition of BRP. Arctic Cat seeks to re-depose Mr. Merlino regarding BRP's efforts to collect ESI in this case (Topic 2 of Arctic Cat's Fourth Notice of Rule 30(b)(6) Deposition of BRP). Specifically, Arctic Cat seeks information regarding: (1) the collection of ESI from BRP's Euclid system; (2) the sources from which his company collected BRP's ESI; and (3) the steps taken to conduct the privilege review.

Further, BRP's counsel's efforts to prevent its witnesses from providing information are inexcusable. His objections to provide information that the parties agreed to provide in the ESI Stipulation (which he drafted) only serve to make this litigation more expensive and difficult. Moreover, BRP's failure to produce a

knowledgeable 30(b)(6) witness regarding BRP's retention and/or destruction of documents regarding snowmobile frames and/or snowmobile rider positioning appears to be part of a larger effort to conceal the fact that BRP destroyed countless responsive documents.  In an email dated December 14, 2011, the day before BRP filed this lawsuit and approximately one month after BRP sent a litigation hold memo to its employees regarding this lawsuit, Bernard Guy authorized the destruction of documents stored at Iron Mountain.  (Daley Decl. Ex. 34; Ex. 9, Ervin Dep. 109:18-22)  At the time the REV was being worked on and released, Guy was the Director for Snowmobile Engineering and R&D, "[h]eading the 100-employee department (13 M$ budget and 14 M$ capital expenses) to develop the award winning 2002 Ski-Doo line-up, as well as the revolutionary 2003 REV snowmobile..." (Daley Decl. Ex. 35.)  Mr. Guy testified that the only documents he kept from the development and release of the REV were press clippings and magazine articles that he had saved at home.  (Daley Decl. Ex. 36, Guy Dep. 210:3-12.)  At the time the lawsuit was filed, Mr. Guy provided the articles to legal counsel.  *Id*.  Despite knowing that Mr. Guy had only press clippings and magazine articles that were relevant to the lawsuit, BRP produced over 100,000 pages of documents the Friday before Memorial Day Weekend 2014, one week before Mr. Guy's deposition, and claimed that they were responsive documents from Mr. Guy's custodial file.

Further, counsel for BRP informed counsel for Arctic Cat that BRP has no documents of its former employee, Robert Handfield, the project manager for the REV who submitted a declaration to the United States Patent and Trademark Office in support

of the patent application for the patents in suit. (Daley Decl. Ex. 2.) In an article about the REV, Mr. Handfield was described as "[o]ne of the defining influences on the REV snowmobiles." (Daley Decl. Ex. 3.) Likely in an effort to avoid this issue, counsel for BRP (which represent Mr. Handfield) have refused to produce him for a deposition and has required Arctic Cat to obtain Letters Rogatory from this Court.

Finally, in the Joint Report on ESI discovery submitted to this Court in August 2013, BRP disclosed that it has no ESI from any of the individuals it deemed to be key to the case prior to 2006 and did not have emails for many individuals prior to 2010. (Daley Decl. Ex. 4, at 28-29.) The technology at issue was developed in the late 1990's and early 2000's. BRP must produce a knowledgeable 30(b)(6) witness who can answer questions about BRP's failure to preserve responsive documents.

## IV. The Court Should Compel BRP to Produce Additional ESI.

BRP has demonstrated that it has not searched or produced all relevant ESI. Under Fed. R. Civ. P. 26(b)(1), discovery may be obtained as to any unprivileged matter "relevant to the claim or defense of any party...." *Id.* Discovery may be sought of relevant information not admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The broad scope of permissible discovery encompasses any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. *Oppenheimer,* 437 U.S. at 351.

As already explained, Arctic Cat searched the files of 123 custodians in this case. (Daley Decl. Ex. 16.)  By contrast, BRP searched the files of only 22 custodians.  (Daley Decl. Ex. 17.)  Arctic Cat did not search the custodial files of Jose Boisjoli or Jean-Yves Leblanc.  (*Id.*)  Moreover, BRP has indicated to Arctic Cat that the custodial file of Robert Handfield was destroyed.  (Daley Decl. ¶ 19.)  As already explained, Mr. Boisjoli, Mr. Leblanc, and Mr. Handfield clearly have relevant information.  And these individuals are just examples; given the disparity between the searches Arctic Cat performed and those BRP performed, BRP is likely to have missed others with relevant information. Arctic Cat respectfully requests BRP perform a thorough ESI search of all relevant custodians and produce all relevant documents.

## V.       The Court Should Compel BRP to Serve a Complete Privilege Log.

BRP's privilege log in this case suffers multiple flaws, and the Court should compel BRP to serve a complete privilege log, remedying each deficiency.  On June 30, 2014, and July 2, 2014, BRP served privilege logs in this case.  (Daley Decl. Ex. 19.) The Eighth Circuit and others have long held, "In order for the [attorney-client] privilege to be applicable, the parties to the communication in question must bear the relationship of attorney and client." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977).  Arctic Cat has identified numerous instances in BRP's privilege log in which BRP has failed to meet this basic standard.

BRP apparently has taken the position that many of the communications with engineer Steward Strickland are privileged.  (*Id.*)  But communications between parties

28

that do not bear the relationship of attorney and client are not privileged.  *Id.*  BRP has not provided an adequate basis for asserting privilege over Mr. Strickland's communications.

Additionally, in a meet and confer agenda dated July 9, 2014, Arctic Cat identified other specific deficiencies in BRP's privilege log as follows:

- Doc. Nos. 5-6 are communications between Steward Strickland (IP Engineer) and Jean-Francois Lambert (Production Engineer). These communications are not the subject of attorney-client privilege because the parties do not bear the relationship of attorney and client. *See Diversified Indus.*, 572 F.2d at 602.

- Doc. No 9 refers only to the name of the law firm (Pillsbury Madison & Sutro LLP) and not a specific attorney.

- Doc. Nos. 30-34 contain no evidence of communications with an attorney (Jean Guy Talbot, Luis Dube, Bruno Girouard, Rejean Lapointe). *See Diversified Indus.*, 572 F.2d at 602.

- Doc. No 37 refers only to the name of the law firm (Yuasa & Hara) and not a specific attorney.

- Doc. No. 38 is a communication between Steward Strickland (IP Engineer) and "S. Imai". This communication is not the subject of attorney-client privilege because the parties do not bear the relationship of attorney and client. *Diversified Indus., Inc. v. Meredith*, 572 F.2d at 602.

- Doc. No. 40 is an internal memorandum written by Steward Strickland "containing information for the purposes of obtaining legal advice" but Strickland is not an attorney and there is no addressee from whom Strickland appears to be seeking legal advice.

- <u>Doc. No. 42</u> is a communication between Steward Strickland (IP Engineer) and Hugues Maltais. This communication is not the subject of attorney-client privilege because the parties do not bear the relationship of attorney and client. *See Diversified Indus.*, 572 F.2d at 602.

- <u>Doc. No. 47</u> is an internal memorandum authored by Steward Strickland (IP Engineer) and Hugues Maltais, purporting to reflect legal advice, but neither appear to be attorneys.

- <u>Doc. No. 48</u> is an internal memorandum written by Steward Strickland "containing information for the purposes of obtaining legal advice" but Strickland is not an attorney and there is no addressee from whom Strickland appears to be seeking legal advice.

- <u>Doc. No. 53</u> is a draft Canadian Patent Application with the author listed as "Smart & Biggar" but no individual attorney listed. No addressee is listed.

(Daley Decl. Ex. 20; *see also* Ex. 19.)  During the meet and confer, BRP agreed that it needed to amend its privilege log to remedy certain deficiencies.  (Daley Decl. ¶ 10.)  As of the parties' subsequent meet and confer on July 24, 2014, BRP had not amended its privilege log.  (*Id.*)  Arctic Cat again requested that BRP serve an amended privilege log. (*Id.*)  At the parties meet and confer on July 30, 2014, BRP again represented it would serve an amended privilege log.  (*Id.*)  As of the date of this filing, BRP has not served an amended privilege log.  (*Id.*)  Arctic Cat respectfully requests that the Court compel BRP to serve a complete privilege log and remedy the deficiencies identified above.

## VI.   The Court Should Compel BRP to Produce Documents Related to Bain

As discussed above, in response to the Bain ESI Motion, BRP's counsel agreed to conduct ESI discovery related to Bain.  Yet in the eleven months since making this promise, and despite Bain's counsel's insistence that BRP possesses documents related to

Bain's acquisition of BRP, BRP has produced on twenty-three documents containing the word "Bain."  With the deadline for the completion of fact discovery now less than one month away, Arctic Cat can no longer wait for BRP to fulfill its promise it made nearly a year ago.  Consequently, this Court should order BRP to produce all documents related to Bain by a date certain.

### A.     Information related to Bain is unquestionably relevant.

In agreeing to conduct ESI discovery related to Bain, BRP has conceded that this information is relevant.  But even if BRP has not conceded that information related to Bain is relevant, the information sought by Arctic Cat easily satisfies the requirements of Fed. R. Civ. P. 26(b)(1).

The introduction of BRP's REV snowmobiles in 2002 only shortly precedes Bain's acquisition of BRP in 2003.  When Bain conducted its due diligence into the acquisition of BRP, it likely looked at the technology associated with the REV snowmobiles, analyzed that technology, and developed an opinion on the marketability of the technology.  Further, Bain likely reviewed BRP's intellectual property, including the patents it then held and patent applications it then had pending or was in the process of producing.  As part of conducting its due diligence, Bain was likely to communicate with BRP regarding the Asserted Patents.  This information is clearly relevant.  *See*, *e.g.*, *I-Med Pharma, Inc. v. Biomatrix, Inc.*, Civ. No. 03-3677, 2007 WL 869539 at *5 (D.N.J. Mar. 20, 2007) (concluding that due diligence conducted by acquiring entity into a product line of the acquired entity is relevant and discoverable).

Further, since its acquisition of BRP in 2003, Bain has held a major interest in BRP.  It is reasonable to conclude that BRP communicated important information to Bain in the ordinary course of its business.  It is also reasonable to conclude that BRP's communications with Bain would have related, in part, to the REV chassis and the Asserted Patents.

In fact, Bain's attorneys actually attended meetings with Patent and Trademark Office personnel related to BRP's '134 Application, which led to the development of at least some of the Asserted Patents.  (*See* Daley Decl. Ex. 21.)  Bain's attorneys attended the appeal of the patent examiner's decision denying the claims contained in the '134 Application.   The '669 Patent is a continuation of the '134 Application.   Bain's participation in the appeal related to the '134 Application demonstrates that it is not merely a passive shareholder.  Bain is actively involved in BRP's business operations.  Over the years, BRP was likely to communicate relevant information to Bain related to the Asserted Patents.

## B.     Arctic Cat can no longer rely on BRP's promise to produce documents.

Nearly a year has passed since August 29, 2013, when BRP agreed to search for, and produce, documents related to Bain.  Yet as the end of fact discovery rapidly approaches, BRP has produced on twenty-three documents related to Bain.   BRP's counsel has made numerous promises regarding the production of Bain documents, but these promises have remained unfulfilled.   Because the discovery requested in unquestionably relevant, and because BRP has promised to produce these documents for

nearly a year, this Court should enter an order compelling BRP to produce documents related to Bain within seven days of the entry of the order.

## VII.   THE COURT SHOULD COMPEL BRP TO PRODUCE ITS CAD FILES.

Arctic Cat's request for production has been pending for more than a year and a half.   This Court has already concluded that the relevance of the CAD files "to the present patent litigation is obvious."   (Doc. No. 260, at 20).   Yet less than one month before the close of fact discovery, BRP has failed to produce these CAD files, despite their "obvious" relevance.   The Court should order BRP to produce the requested CAD files to Arctic Cat within seven days of the entry of the order resolving this motion.

### A.     The requested files are clearly relevant.

Arctic Cat requested the BRP produce its CAD files of all BRP snowmobiles that BRP asserts embodies any part of the Asserted Patents and any competitors' snowmobiles. Arctic Cat's request extends both to CAD files of BRP's own snowmobiles, as well as any CAD files or overlays BRP has created based on its competitors snowmobiles.   Both categories of CAD files are relevant to the present patent litigation.

The relevance of BRP's CAD files of its own snowmobiles is "obvious."   BRP has argued that all of REV snowmobiles embody the technology contained in the Asserted Patents.   As the plaintiff in this action, BRP has the burden of proving this assertion, yet it has consistently refused to produce any information in support of its claim.   Arctic Cat does not agree with BRP's assertion, but Arctic Cat can neither contest nor confirm BRP's assertion without analyzing the CAD files BRP has refused to produce for more than a year and a half.

33

Arctic Cat has argued that there have been significant changes to REV snowmobiles over the years, and that these changes mirror the designs of Arctic Cat's snowmobiles. BRP has withheld the information necessary for Arctic Cat to evaluate this claim. BRP has only recently produced the press kits and marketing materials related to its REV snowmobiles. By withholding this information, as well as the requested CAD files until the end of fact discovery, BRP has limited Arctic Cat's ability to develop its defenses to BRP's claims.

CAD files related to BRP's competitors' snowmobiles are also relevant to the parties' claims and defenses in the instant action. As Bernard Guy ("Mr. Guy"), BRP's vice president and regional general manager of North America, stated, "[i]t is common practice in engineering to make sure you know well the products your company is up against." (Daley Decl. Ex. 36, Guy Dep. 59:20-21). Mr. Guy also stated that, "evaluating competitor products is part of the product development process. Knowing your competitors is part of the development process." (*Id.* 69:14-16). According to Mr. Guy, "knowledge of how your competitors perform is an important input into the development of a product." (*Id.* 61:19-21).[11]

As BRP's own vice president admitted, BRP analyzed competitors' snowmobiles as part of its product development process. Hence, it is reasonable to conclude that BRP analyzed its competitors' snowmobiles in the design, development, production, and

---

[11] On numerous occasions, BRP's counsel has suggested that Arctic Cat engaged in wrongful conduct when it evaluated BRP's products. These admonitions are confusing in light of Mr. Guy's statement that the analysis of a competitor's products is both a common practice and a part of BRP's own product development process.

marketing of the Asserted Patents and the REV snowmobiles. It is likely that, during the course of this analysis, BRP developed CAD files related to its competitors' snowmobiles. These CAD files are relevant to the parties' claims and defenses in this matter.

**B.    The Court should compel BRP to produce the CAD files by a date certain.**

More than a year and a half has passed since Arctic Cat first requested CAD files from BRP. Yet as the end of fact discovery rapidly approaches, BRP has failed to produce, or provide Arctic Cat access to, the CAD files. BRP's counsel has made numerous promises that Arctic Cat would be allowed access to BRP's CAD files, but these promises have remained unfulfilled. Because the deadline for the completion of fact discovery is rapidly approaching, time is of the essence. Given BRP's constant delays, and Arctic Cat's urgent need for the requested information, the Court should enter an order compelling BRP to produce the CAD files, on a hard drive, to Arctic Cat within seven days of the entry of the order resolving this motion.

## CONCLUSION

Arctic Cat respectfully requests that the Court:

- compel deposition dates certain for the depositions of Robert Handfield, Peter Watson, Jerome Wubbolts, Anne-Marie Dion, Jean-Guy Talbot, Jean-Yves Leblanc, Jose Boisjoli, Jonathan Cutler, and any outstanding Rule 30(b)(6) designees within seven days of the Court's Order;

- compel BRP to provide a date certain for the inspection of Euclid and Arctic Cat snowmobiles at BRP's facilities;

- compel BRP to pay Arctic Cat's costs for returning to take the deposition of Rule 30(b)(6) designee Julie Morel and to reconvene, and pay Arctic Cat's costs for returning to take, the Rule 30(b)(6) depositions for Topics 1(a), 1(b), and 2 of Arctic Cat's Amended Third Notice of Rule 30(b)(6) Deposition;

- compel BRP to serve a complete privilege log, remedying all the deficiencies identified above;

- compel BRP to produce additional ESI documents, including but not limited to those from the custodial files of Mr. Boisjoli and Mr. Leblanc;

- order BRP to produce all documents related to Bain within two days of the entry of an Order on the instant motion; and

- order BRP to produce, via hard drive(s), CAD files of all BRP snowmobiles that BRP asserts embodies any part of the Asserted Patents and any competitors' snowmobiles, including Arctic Cat, Polaris, and Yamaha.

Dated: August 4, 2014.                    **BARNES & THORNBURG LLP**

                                          *s/Annamarie A. Daley*
                                          Annamarie A. Daley (#158122)
                                          Niall A. MacLeod (#269281)
                                          Emily Grande Stearns (#388783)
                                          225 South Sixth Street, Suite 2800
                                          Minneapolis, MN  55402
                                          Phone: (612) 333-2111
                                          Fax: (612) 333-6798

                                          **Attorneys for Arctic Cat Inc. and Arctic Cat Sales Inc.**

MIDS01 718183v1