## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| BOMBARDIER RECREATIONAL PRODUCTS INC. and BRP U.S. INC., | Civil No.  12-2706 (JRT/LIB) |
| Plaintiffs/Counter Defendants, | **FILED UNDER SEAL** |
| v. | **MEMORANDUM OPINION AND ORDER** |
| ARCTIC CAT INC. and ARCTIC CAT SALES INC., | |
| Defendants/Counter Claimant. | |

Harry C. Marcus and Robert K. Goethals, **LOCKE LORD LLP**, Three World Financial Center, New York, NY  10281, and Kevin D. Conneely, **STINSON LEONARD STREET LLP**, 150 South Fifth Street, Suite 2300, Minneapolis, MN  55402, for plaintiffs.

Annamarie A. Daley, **JONES DAY**, 90 South Seventh Street, Suite 5090, Minneapolis, MN  55402, and Niall A. MacLeod, **KUTAK ROCK LLP**, 220 South Sixth Street, U.S. Bank Plaza South, Suite 1750, Minneapolis, MN  55402, for defendants.

This snowmobile patent dispute is in its fourth year, and both parties have moved for partial summary judgment.  Three patents owned by Plaintiffs Bombardier Recreational Products and BRP U.S. Inc. (together "Bombardier") are at issue.  Two of the patents cover a snowmobile with a "pyramidal brace assembly" underneath the snowmobile's outer covering that holds up the steering wheel and provides stability to the snowmobile's frame.  The other patent involves a snowmobile's seat and its positioning.

The Court finds Bombardier is entitled to summary judgment on the 7,124,847 patent because Bombardier has met its burden of proving infringement.  Arctic Cat's

three separate motions for partial summary judgment, on the other hand, must all be denied because Arctic Cat has not shown with clear and convincing evidence that Bombardier's patents are invalid.

## BACKGROUND

### I.  ALLEGED PRIOR ART

#### A.  1962 FOX TRAC SNOWMOBILE

The Snowmobile Hall of Fame Museum in St. Germain, Wisconsin, has on display a 1962 snowmobile called the "Fox Trac":





(Decl. of Mark Warner ("Warner Decl."), Ex. A at 9, 12, Mar. 27, 2016, Docket No. 683.)[1]   Bombardier's expert Gary Gilbertson states that "the Fox Trac was an early generation, limited-function, compact vehicle designed to operate at relatively low speed over flat terrain."  (Decl. of Joseph A. Farco ("Third Farco Decl."), Ex. D ¶ 41, Apr. 25, 2016, Docket No. 721.)  Gilbertson also states that the Fox Trac could go no faster than 13 miles per hour.  (*Id.* ¶ 47.)

---

[1] When citing to documents in the record, the Court's pin citations are to CM/ECF pagination, except with respect to deposition testimony, where the Court cites to the document's internal pagination.

**B.     STEVE THORSEN'S "MOD"**

In 1988, a man named Steve Thorsen and another man founded a small company called "T/S Racing."   (Decl. of Niall A. MacLeod ("Second MacLeod Decl."), Ex. 1 ("Thorsen Dep.") at 32:16-22, Mar. 27, 2016, Docket No. 695.)  T/S Racing designed and manufactured "racing snowmobiles" and "sleds" for Arctic Cat and raced them at ice oval races.  (*Id.* at 32:23-33:25.)  In 1991, T/S Racing made a vehicle called the "Mod," which was literally a modification of Arctic Cat's "Prowler" snowmobile, made suitable for oval ice racing.   (*Id.* at 19:11-22, 26:15-27:13, 36:22-37:12, 41:12-19, 56:25-57:7.) The Mod won success in several oval ice races and was displayed on the October 1991 cover of *Snow Week*:



(Second MacLeod Decl., Ex. 7.)

One of the modifications made to the Prowler to create the Mod was adding what Arctic Cat labels in this litigation a "pyramidal brace assembly":



(*Id.*, Ex. 9 ¶ 146.)  In his deposition, Thorsen stated that the red and green piping on the Mod was to resist "torsional twist" and "to help stiffen that up."  (Thorsen Dep. at 120:5-10, 143:10-144:2, 147:1-19.)  But Thorsen also could not recall how the Mod's assembly stiffened the frame (*id.* at 136:5-23), had difficulty distinguishing sleds from the 1990s (*id.* at 36:11-21, 96:5-21, 97:15-99:10), and could not remember what exact modifications he made to the Mod (*id.* at 146:3-22).  When Bombardier's expert Gerard Karpik examined the Mod, he pushed the Mod's assembly and stated it "lacked stiffness."  (Decl. of Joseph A. Farco ("Second Farco Decl."), Ex. C at 139:11-140:3, Apr. 25, 2016, Docket No. 715 ("I . . . pushed on the side of the tube . . . .  [I]t pushed, it moved, it was easy.").)

## II.   BOMBARDIER'S PATENTS

In 1998, Bombardier filed and eventually received the three relevant patents – the 7,213,669 ("the '669 patent"), 7,124,847 (" '847 patent"), and '7,124,848 (" '848 patent")  patents.

### A.     THE '847 PATENT

The '847 patent claims a snowmobile with a frame that includes, in the back of the vehicle, a "tunnel" that supports a "drive track," and an "engine cradle" in front of the tunnel.  A key part of the patent at issue in the present motions is the "pyramidal brace assembly," made of "legs" or "bars," which holds up the steering wheel, is connected to and covers the frame, and is supposed to enhance the frame's strength and rigidity.

Relevant here are Claims 1, 6, 7, and 8 of the '847 patent.  Claim 1 reads:

A snowmobile, comprising:

a frame including a tunnel and an engine cradle forward of the tunnel;

an engine mounted in the engine cradle;

a drive track disposed below and supported by the tunnel and connected operatively to the engine for propulsion of the snowmobile;

left and right skis disposed on the frame;

a straddle seat disposed on the tunnel above the drive track and rearward of the engine;

a pair of footrests supported by the frame;

a steering column movably connected to the frame other than via a head tube and operatively connected to the two skis;

a handlebar connected to the steering column;

a pyramidal brace assembly connected to the frame, the assembly including:

left and right rear legs extending forwardly and upwardly from the tunnel, each of the left and right rear legs having a front end and a rear end, the rear ends of the rear legs being spaced further from each other than the front ends of the rear legs, and

> left and right front legs extending rearwardly and upwardly from the frame forward of the tunnel, each of the left and right front legs having a front end and rear end, the front ends of the front legs being spaced further from each other than the rear ends of the front legs.

(Appendix List ("J.A.") at 47-48, Mar. 9, 2015, Docket No. 469.)

> Claim 6 then builds on Claim 1:

> The snowmobile of claim 1, wherein the rear ends of the front legs of the pyramidal brace assembly and the front ends of the rear legs of the pyramidal brace assembly are interconnected and form an apex not forward of the engine.

(*Id.* at 48.)

> Claim 7 then depends on Claim 1 and Claim 6:

> The snowmobile of claim 6, further comprising an upper column extending upwardly from the frame.

(*Id.*)

> Finally, Claim 8 reads:

> The snowmobile of claim 7, wherein the upper column forms the apex with the front ends of the rear legs of the pyramidal brace assembly and the rear ends of the front legs of the pyramidal brace assembly.

(*Id.*)

## B.     THE '848 PATENT

The '847 patent, like the '847 patent, pertains to a snowmobile frame that includes a "pyramidal brace assembly." (*Id.* at 91-92.) The parties agree that all of their arguments on the '847 apply with equal force to the '848 patent.

## C.     THE '669 PATENT

The '669 patent, entitled "Snowmobile Ride Positioning," "addresses the need to improve the driver's and passenger's positions to minimize the effect on the riders over uneven terrain and to comfortably accommodate two passengers."  (Mem. of Law & Order ("Claim Construction Order") at 3, Sept. 28, 2015, Docket No. 552; J.A. at 108.)

Claim 88 of the '669 patent – one claim at issue in the current motions - states in relevant part:

> A snowmobile, comprising:
>
> . . .
>
> a seat position defined by the seat;
>
> . . .
>
> a steering shaft operatively connecting the two skis to the steering device for steering the snowmobile, wherein the steering shaft is disposed over the engine . . . and the steering position is disposed forward of the forward-most drive track axle.

(J.A. at 118.)  In the Court's Claim Construction Order, United States District Judge Michael Davis – previously assigned to the case – construed the term "seat position defined by the seat" as "a portion of the straddle-type seat positioned beneath the center of weight distribution of a 50th percentile North-American adult male weighing 78 kg and has the body build illustrated in FIGS. 9A, 9B and 10 seated in a natural operating position."  (Claim Construction Order at 35-36.)

Claims 92 through 95 of the '669 patent each claim a "snowmobile," as that term is described in Claim 88, "wherein the steering position is disposed forward of the forward-most drive track axle" by a specific numerical measurement-ranges; each of the

four claims covers a different "steering position" distance at one of four measurement ranges.  (*Id.*)

## III.   PROCEDURAL BACKGROUND

Bombardier initiated this action in federal court on December 15, 2011.  (Compl., Dec. 15, 2011, Docket No. 1.)  Bombardier alleges that numerous models of Arctic Cat snowmobiles infringe on the three at-issue patents.  (*See* Am. Compl. ¶¶ 14-15, 26-27, 38-39, Mar. 1, 2012, Docket No. 21 (detailing lines of infringing snowmobiles).)  Arctic Cat counterclaimed with eight claims of its own, requesting a declaratory judgment stating, with respect to each patent, that Arctic Cat had not infringed on Bombardier's patents and that Bombardier's patents were invalid.  (Answer & Countercl. at 9-13, Mar. 15, 2012, Docket No. 29.)

In 2013, Bombardier served Arctic Cat with "Infringement Claim Charts," identifying 94 Arctic Cat snowmobile models that Bombardier alleged to be infringing on Bombardier's patents.  Bombardier relied on two "representative exemplars" that purported to represent the infringement of each of the 94 models:  the 2008 Sno Pro 600 Race Chassis Model and the 2012 F 800 LXR F4 Chassis Model.  (Decl. of Kevin C. Breen ("Breen Decl.") ¶ 10, Mar. 25, 2016, Docket No. 649.)

On September 28, 2015, the Court issued a claim construction order construing the following terms, phrases, and clauses in the '847 patent:

- "frame" means "the structural core of the snowmobile that holds, carries or supports other components."  (Claim Construction Order at 9.)

- "pyramidal brace assembly connected to the frame" means "a brace assembly with a pyramid-like shape connected to the frame." (*Id.* at 14.)

- "apex" means "[t]he uppermost part of the pyramidal brace assembly." (*Id.* at 15.)

- "upper column" means "an inverted U-shaped structure forming legs extending upwardly from the left and right sides of the frame." (*Id.* at 17.)

- "engine cradle" means "the part of the frame that supports the engine." (*Id.* at 20.)

- in "a straddle seat disposed on the tunnel above the drive track and rearward of the engine," "disposed on" means "arranged to be carried by." (*Id.* at 20-24.)

- a "drive track disposed below and supported by the tunnel" means a "drive track that extends below and is supported by the tunnel." (*Id.* at 29.)

On March 25, 2016, Bombardier filed a motion for partial summary judgment on certain claims in the '847 patent. (Bombardier's Mot. for Partial Summ. J., Mar. 25, 2016, Docket No. 646.) The same day, Arctic Cat filed its own motion for entry of partial summary judgment on the '847 and '848 patents. (Arctic Cat's First Mot. for Partial Summ. J., Mar. 25, 2016, Docket No. 651.) Two days later, Arctic Cat filed two more motions for entry of summary judgment. (Arctic Cat's Second Mot. for Partial Summ. J., Mar. 27, 2016, Docket No. 674 ('847 and '848 patents); Arctic Cat's Third Mot. for Summ. J., Mar. 27, 2016, Docket No. 680 ('669 patent).)[2]

---

[2] Also on March 25, 2016, Arctic Cat filed a motion to exclude expert testimony that is currently pending. (Arctic Cat's First Mot. to Exclude Expert Testimony, Mar. 25, 2016, Docket No. 656.) Bombardier filed its own motion to exclude expert testimony the next day. (Bombardier's Mot. to Exclude Expert Testimony, Mar. 26, 2016, Docket No. 667.) Then Arctic Cat filed another motion to exclude expert testimony on March 27. (Arctic Cat's Second Mot. to Exclude Expert Testimony, Mar. 27, 2016, Docket No. 685.) The Court will address those motions in a separate order.

## IV. ALLEGEDLY-INFRINGING SNOWMOBILES

Much of the parties' present dispute focuses on the two snowmobiles that Bombardier argues are representative of the 94 models alleged to be infringing.

### A. THE RACE CHASSIS SNOW PRO

Arctic Cat marketed a series of snowmobiles, beginning with the 2008 "Sno Pro 600" racing snowmobile (the "Sno Pro") that were built on a "tubular . . . chassis" that Arctic Cat described as a "pyramidal structure built to pound harsh terrain with absolute conviction." (Decl. of Joseph A. Farco ("First Farco Decl."), Ex. C at AC00014545[3], Mar. 25, 2016, Docket No. 650.)



(*Id.*, Ex. H at H-5, H-6 (photos of the chassis to the Sno Pro).)

The Sno Pro 500 uses a similar chassis. (First Farco Decl. ¶ 18.) Arctic Cat changed the chassis beginning with the 2012 Sno Pro racing snowmobile products. (*Id.* ¶ 19.)

---

[3] The Court's will cite to the Bates number for this document.

**B.  THE F4 CHASSIS PROCROSS, PROCLIMB, AND SNO PRO MODELS**

For the second class of allegedly-infringing snowmobiles, in 2012 and 2013 Arctic Cat marketed 83 different models of snowmobiles built on the "F4 Chassis."  (Breen Decl. ¶ 10.)



(First Farco Decl., Ex. H at H-9 (photos of the F4 Chassis).)  Arctic Cat has referred to the brace assembly of the F4 Chassis as a "pyramid design," just as it did the Sno Pro Racing Chassis.  (*See* Farco Decl., Ex. C at AC.RF.012560 ("The pyramid designs of these race-proven chassis . . . .").)

## ANALYSIS

The Court will address the issues presented in the parties' respective motions by patent and by issue, not by motion, because the various motions present overlapping issues.

## I.      STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial."  *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49).

## II.     THE '847 PATENT

### A.     INFRINGEMENT

"An infringement analysis is a two-step process in which the court first determines, as a matter of law, the correct claim scope, and then the fact-finder compares the properly construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present, either literally or by a substantial equivalent, in the accused device."  *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1341 (Fed. Cir. 2001).

Here, much of the debate over the scope of the '847 patent's claims was settled by the Court's Claim Construction Order.  Now, infringement is only in dispute with respect to a few aspects of Claim 1; Arctic Cat does not dispute infringement on Claims 6, 7, or 8 of the patent.  The Court finds that Bombardier has met its burden in proving infringement for the following reasons.

### 1.     "an engine mounted in the engine cradle"

Arctic Cat maintains and has consistently maintained that the exemplars' engines are each mounted **on** the engine cradle, not **in** the engine cradle, and therefore this claim limitation is not present in the exemplars and the products do not infringe.  In its briefing to the Court for claim construction, Arctic Cat proposed that the Court construe this claim limitation accordingly to require "a substantially integral structure including at least a bottom plate and left and right side walls," because "[t]he word 'in' does not mean 'on' or 'on top of.'"  (Arctic Cat's Markman Brief at 10-12, Dec. 19, 2014, Docket No. 448.)

Thus, under Arctic Cat's proposed construction, an engine that sat on top of the "engine cradle" would not have met the claim's terms, and since the exemplars' engines sit on the top of an engine cradle, Arctic Cat would have presumably prevailed on this portion of the case.

But the Court's Claim Construction Order rejected Arctic Cat's proposed construction after finding that it "seeks to add limitations" not in the patent.  (Claim Construction Order at 20.)  The Court instead took the route that Arctic Cat did not prefer and construed "engine cradle" as "the part of the frame that supports the engine," reasoning that this broader "construction is consistent with the claim language and the specification."  (*Id.*)

Arctic Cat is now trying its argument one more time:  an engine that sits **on** top of "the frame that supports the engine," as is the case with the two exemplars, is not literally "**in**" the frame, and therefore the exemplars do not infringe, according to Arctic Cat.  But the Court already construed the relevant language and rejected Arctic Cat's argument, and Arctic Cat's attempt to resurrect the "in"-versus-"on" discussion is foreclosed by the law of the case.

Arctic Cat's only argument to the contrary is that the Court only construed what an "engine cradle" is, and not when something is "in" an engine cradle.  But if that was what the Court had intended, it would surely have said so; instead, the Court explicitly rejected Arctic Cat's proposed construction.  The Court therefore finds that the word "in" as construed by the Court in the Claim Construction Order indicates that the exemplars' engines are indeed "in the engine cradle."

2.    **"a straddle seat disposed on the tunnel above the drive track and rearward of the engine"**

Bombardier argues that the exemplars meet the "straddle seat" claim limitation as a matter of law because of uncontroverted evidence offered by Bombardier and the Court's Claim Construction Order holdings.

The parties agree that the seat on the exemplars is separated from the tunnel by a fuel tank and a set of "rear spars"; Bombardier's only hurdle is to show that the seat is "disposed on" the tunnel.  In Arctic Cat's briefing for the *Markman* hearing, it argued that "disposed on" meant "placed directly on," so that for a seat to be disposed on the tunnel, it would literally have to be on it, seat touching tunnel.  (Arctic Cat's Markman Brief at 16-18.)  Bombardier argued in response that "disposed on" just meant "arranged to be carried by" – a much broader definition – and therefore could apply to instances where, for example, a seat was merely supported by a tunnel and there were intervening objects between the two.  (Claim Construction Order at 20-24.)  One of Arctic Cat's key arguments against Bombardier's broader "disposed on"-construction was that it was "indefinite or vague, because it is unclear as to how many degrees of separation can occur for one structure to still be 'disposed on' another structure."  (*Id.* at 22.)  But the Court rejected Arctic Cat's vagueness argument while citing a 2015 Federal Circuit case addressing the same words at issue here – "disposed on" – that also rejected the same literalistic interpretation offered by Arctic Cat.  (*Id.* at 24); *see In re Orbital Techs. Corp.*, 603 Fed. App'x. 924, 931 (Fed. Cir. 2015) (stating that the court would "read[] the claims too narrowly" if it construed the words "disposed on" as requiring the items "to be

attached directly . . . without intervening material"); *see also Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1342 (Fed. Cir. 2013) (holding that district court erred by declining to read the term "connected to" as "encompass[ing] indirect linkages").  As a result, the Court's order was clear:  one item could be separated from another item by intervening material and the one item could still be "disposed on" the other.

Bombardier has also put forward uncontroverted evidence, in the form of expert testimony, that the seat is indeed supported by the tunnel, while Arctic Cat has put forward nothing:  Bombardier's expert Kevin C. Breen states that in his opinion "[t]he tunnel . . . provides the structural support for the seat," (Decl. of Niall A. MacLeod ("Third MacLeod Decl."), Ex. 1 at 143:3-9, Apr. 25, 2016, Docket No. 707; *see also id.* at 143:22-144:1 ("The tunnel provides the structural support to carry it.").)

Arctic Cat argues that it does in fact have evidence supporting its view:  the testimony of its expert David Karpik, who states that Bombardier's "application of the term 'disposed on' makes no sense" and will dispute what the words "disposed on" mean. (*Id.*, Ex. 3 ¶ 121 ("under the logic and analysis of the Breen Report, the seat could be 'disposed on' the rear suspension").)  The problem with Karpik's testimony, however, is it is not about fact; it is testimony about what "disposed on" means, and that legal question was already addressed by the Court's Claim Construction Order.

The Court therefore finds that the exemplars meet the "disposed on" claim limitation too.

### 3.    "a steering column movably connected to the frame other than via a head tube and operatively connected to the two skis"

Arctic Cat admits that the exemplars have a steering column, and do not have a head tube; it only disputes that the exemplar steering columns are "movably connected to the frame."  But Arctic Cat's argument fails as a matter of law due to the Court's prior holdings in the Claim Construction Order.

Here, Bombardier argues the steering columns on the exemplars are connected to the frame in two places:  the "upper end of the steering column" is attached "via a steering support that is connected to the frame by the tubular spars," and the "lower end of the steering column" is connected via "a bushing that is bolted to the frame."  (Breen Decl. ¶¶ 28.)  Bombardier puts forward the testimony of its expert, Breen, as well as two diagrams in two separate exhibits:



AC00039893 and AC00014818 (Figures 0743-090 and 743-092A)

(First Farco Decl., Ex. J.)



(*Id.*, Ex. K.)

Arctic Cat argues that there is at least a genuine issue of material fact here. First, Arctic Cat argues that because there are "rear spars" between the upper end of the steering column and the frame, the steering column is not actually "connected" to the frame.[4] Similarly, Arctic Cat argues the lower end of the steering column is also not "connected" to the frame because a bracket sits in between the steering column and the frame.

But Arctic Cat's argument is an attempt to impose a direct-connection requirement, similar to the directly-"disposed on" argument that failed in claim

---

[4] As mentioned above in the Court's discussion of this case's procedural history, the Court construed the term "frame" to mean "the structural core of the snowmobile that holds, carries or supports other components." (Claim Construction Order at 9.)

construction.   Just like with the "disposed on" language, the Court finds that the "connected to" language cannot be read so narrowly; one item can be "connected to" another item even if something else intervenes, just as one item can still be "disposed on" another item even if there is something between the two items.   The real question is whether the "connection" between the steering column and the frame is so attenuated that it no longer constitutes a connection at all.

In this case, however, the connection between the lower end of the steering column is so close to the frame – separated only by one bracket – that no reasonable jury could find anything other than that the two are connected, especially in light of the Federal Circuit's broad interpretation of what "connected to" means.   *See Douglas Dynamics*, 717 F.3d at 1342-43 (holding that the district court erred when it decided that one frame was not "connected to" another frame simply based on the presence of a support frame between the two items).   The same is not true, however, for the upper part of the steering column – that portion of the steering column is separated from the frame by much longer braces.   Still, the lower-end connection is sufficient to require the Court to find that the exemplars meet the "connected to" claim limitation.

### 4.     "a pyramidal brace assembly connected to the frame"

Arctic Cat only disputes infringement with respect to two aspects of this claim limitation.   First, Arctic Cat argues the exemplars' respective brace assemblies are not

"pyramidal" in shape, as the patent requires.[5]   Bombardier argues they undeniably are, based on two pieces of evidence:  (1) Arctic Cat's own expert, David Karpik, stated "yes" when asked if one of the exemplars had a "pyramidal brace assembly," stated that the top of the brace assembly was "like an apex," and stated that the assembly was "triangular." (Decl. of Joseph A. Farco ("Fourth Farco Decl."), Ex. B at 188:15-188:18, May 20, 2016, Docket No. 754.)  (2) In eight other instances, in marketing and tax documents, Arctic Cat has referred to one or more of the exemplars as having a "pyramidal" shape.  (*See* Bombardier's Mem. in Supp. of its Mot. for Summ. J. at 28-30, Mar. 25, 2016, Docket No. 648 (quoting each instance).)

Arctic Cat, in response, cites photographs of the exemplars to argue that their brace assembly shape is "trapezoidal" rather than "pyramidal" because the apex of the brace assembly is flat, rather than pointed, and the top of the assembly is "at least half" of the length of the base.  The Court has reviewed the photographs of the exemplars, and while the braces are not archetypal pyramids, they are indeed "pyramidal" and "pyramid-like."[6]

---

[5]  In the Court's Claim Construction Order, the Court construed "pyramidal brace assembly" to mean "a brace assembly with a pyramid-like shape connected to the frame." (Claim Construction Order at 14.)

[6]  Arctic Cat also points out what it sees as an inconsistency between an argument Bombardier made against invalidity and the argument Bombardier makes here in opposition to Arctic Cat's pyramid-shape argument here.  As addressed below, Bombardier argues that the T/S Mod snowmobile did not anticipate the '847 patent in part because the Mod lacks a pyramidal shape.  In other words, Bombardier argues the exemplar assemblies are pyramidal while the Mod's assembly is not.  The problem with this approach, however, is that the Mod's assembly is more pyramidal-looking than the exemplar assemblies.  Thus, if the exemplars are "pyramidal," then the Mod is too, and Bombardier's anti-anticipation argument is wrong with

(Footnote continued on next page.)

The Court finds that the exemplars' assemblies are "pyramidal."

### 5.   "front legs extending rearwardly and upwardly from the frame"

Arctic Cat also argues the exemplars' front legs do not "extend[] rearwardly and upwardly from the frame," as the patent requires.  Arctic Cat argues the Sno Pro 600 "Race Chassis" exemplar does not meet this claim element because its legs go forward "for some distance" and only later extend rearwardly.  But the claim limitation does not require the legs to extend rearwardly along every pitch and turn – just that they extend rearwardly on the whole.  The legs do exactly that, and so the Court finds that this claim limitation is present in the exemplars.

### B.   REPRESENTATIVE INFRINGMENT

Arctic Cat next argues that even if Bombardier has met its burden in showing that it is entitled to summary judgment on its infringement claims with respect to the exemplar models, Bombardier is not entitled to the same finding with respect to all of the 94 allegedly-infringing models because Bombardier has failed to make a prima facie showing that the exemplars are in fact representative of all the models.

---

(Footnote continued.)

respect to the "pyramidal" claim limitation.  On the other hand, if the Mod is not pyramidal, then the exemplars are not pyramidal either, the exemplars do not infringe, and Bombardier's infringement claim fails.  The Court agrees that Bombardier's arguments are inconsistent, but because the Court finds that the exemplars' assemblies are "pyramidal," the inconsistency is a problem for Bombardier's anti-anticipation argument, not its infringement argument.  But, because Arctic Cat must show that each and every claim limitation in the '847 patent is present in the Mod, not just the "pyramidal" claim limitation, and Arctic Cat cannot meet that burden, Bombardier's inconsistency is not fatal.

"When a patentee with the burden of proof seeks summary judgment of infringement, it must make a prima facie showing of infringement as to each accused device before the burden shifts to the accused infringer to offer contrary evidence." *L&W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006). A party may not receive summary judgment of infringement on a long list of devices if it offers mere conclusory statements that the supposedly representative device is indeed representative of all the devices. *Id.*

Bombardier argues that it has met its burden by presenting the deposition testimony of its expert witness Kevin Breen, wherein he stated that he determined that the exemplars were representative of all 94 snowmobiles "by reviewing the parts catalogs and service manuals of all of the 94 models, as well as CAD drawings, in view of the limitations of claims 1 and 6-8 of the '847 Patent." (Breen Decl. ¶ 6.) Breen also stated that snowmobile companies like Arctic Cat will build different snowmobiles on the same chassis and platform, and that is what happened here: Arctic Cat used the chassis at issue to build 94 different snowmobile models – a statement that implicitly acknowledges that the 94 models can be different and nonetheless infringing. (*Id.* ¶¶ 8-10.)

The Court finds that Breen's statements are sufficient for Bombardier to pursue its representative theory, in light of the facts of the *L&W* case. In *L&W*, the patentee's expert's description of his process was not sufficiently detailed. He stated that one allegedly-infringing "heat shield" was representative of the defendant's 16 allegedly-infringing products because he "personally examined approximately all L & W heat shields provided to Shertech in this matter." *L&W*, 471 F.3d at 1316. The expert said

nothing more.  *Id.*  After considering that statement, the court wrote, "Setting aside the problematic word 'approximately,' that statement does not reveal what form his examination of the other products took, nor does it state what the results of that examination were.  It is therefore of marginal value at best."  *Id.*  The court found that the patentee had failed to meet its burden of making a prima facie showing of infringement as to each accused device, and therefore reversed the district court's grant of patentee's summary judgment motion.  *Id.* at 1315-18.

Breen's statement about his process, by comparison, is not nearly as general as the *L&W* expert's.  Breen stated that he reviewed parts catalogs, service manuals, and CAD drawings of in determining which snowmobiles were representative of what other snowmobiles.  (Breen Decl. ¶ 6.)  The *L&W* expert stated nothing more than that he "examined" the products before arriving at his finding that the exemplars were representative.  *L&W*, 471 F.3d at 1316.  The Court also notes that Arctic Cat could have come forward with an affirmative argument, supported by exhibits or testimony, showing that the exemplars are not representative of the 94 models, but it has not done so.  Breen's statements are sufficient for the Court to consider the exemplars as exemplars of the 94 at-issue products.

## C.    INVALIDITY

Arctic Cat makes three arguments that the '847 patent is invalid in two separate motions for partial summary judgment.  "Under the Patent Act . . . a patent is 'presumed valid.'"  *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929 (2015) (quoting 35

U.S.C. § 282(a)).  Thus, a party that seeks a court finding that a patent is invalid must show as much by "clear and convincing" evidence.  *Id.* at 1929 (citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 101-04 (2011)).

### 1.    Indefiniteness

Arctic Cat first mounts an indefiniteness argument in support of its motion for summary judgment on the '847 patent.  The Patent Act requires "claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as [the] invention."  35 U.S.C. § 112, ¶ 2 (pre-2012 amendment).  Those claims "must provide objective boundaries for those of skill in the art."  *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).  If those skilled in the art have "reasonable certainty" of what is claimed, then the claims meet § 112's provisions. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014).

Arctic Cat argues the '847 patent is indefinite because it is internally inconsistent: the patent claims a "pyramidal brace assembly connected to the frame," suggesting the brace assembly and the frame are two different things, but the "pyramidal brace assembly" is also part of the "frame," and therefore cannot be connected to it.  Arctic Cat argues the brace assembly can either be connected to the frame, or it and the frame can be one thing, but – in Arctic Cat's view – Bombardier cannot have it both ways.  And because the '847 patent does try to have it both ways – presenting the assembly and the frame as different items and the same item at the same time – the patent is invalid as indefinite, according to Arctic Cat.  Arctic Cat cites two series of evidence for this

argument.  First, it points to the '847 specification's references to the "frame assembly" as including both the brace assembly and the undergirding frame.  (*See, e.g.*, J.A. at 37 ("Another object of the present invention is to provide a frame assembly where the forward support assembly and the rear brace assembly from a pyramidal construction.").) Second, Arctic Cat cites various Bombardier statements where Bombardier used the word "pyramidal" as an adjective to describe the "frame."  (*See, e.g.*, Decl. of Niall A. MacLeod ("First MacLeod Decl."), Ex. 10, Mar. 25, 2016, Docket No. 651 (advertising a "pyramidal frame").)

The major problem with Arctic Cat's arguments is that none of the usage that Arctic Cat cites literally states that the frame and the brace assembly are all one and the same.  Instead, the cited statements refer to the entire structure – the frame and brace assembly together – with catchall references (i.e., "frame assembly" and "pyramidal frame") that suggest the assembly adds something to the frame, but not necessarily that the assembly and the frame cannot be differentiated.  At the very least, Arctic Cat's evidence is not "clear and convincing evidence" that a person skilled in the art would not know what is claimed.

The Court will therefore deny Arctic Cat's partial motion for summary judgment of indefiniteness for the '847 and '848 patents.

### 2.    Anticipation

Arctic Cat argues the '847 patent was anticipated by the T/S Mod.  The Patent Act requires that a patent be novel, and so if the patent is anticipated by prior art, then the

patent is invalid.  *See* 35 U.S.C. § 102(a).  "A single prior art reference anticipates a patent claim if it expressly or inherently describes each and every limitation set forth in the patent claim."  *Trintex Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002).

Only a few aspects of the '847 patent are at issue in Arctic Cat's anticipation argument.  First, the parties dispute whether the Mod was a "snowmobile" and whether it had "skis."  And second, the parties dispute whether Mod had a "pyramidal" brace, although as mentioned above, the Court finds that it did.  However, even if only one of the '847 patent's claim limitations is not present in the Mod, the Mod does not anticipate the patent, and the Court finds that Arctic Cat has not met its burden in showing that the Mod's pyramidal assembly "brace[d]" the frame, or that the assembly's purpose was to brace the frame, as is the case with the '847 patent.  Arctic Cat relies on testimony from Mod-creator Thorsen, who argues that the assembly's purpose was to brace the frame, but Bombardier highlights how Thorsen hedged and undermined that testimony in crucial respects:  he couldn't say the assembly significantly increased the frame's stiffness, he had difficulty remembering much of his work from the early '90s, and he could not remember aspects of how he designed the Mod.  Bombardier argues persuasively that after cross-examination, any evidence Thorsen offered would be far from uncontroverted and that summary judgment would therefore be inappropriate.  Additionally, Bombardier intends to offer testimony from its expert Gerard Karpik stating that when Karpik pushed the Mod's assembly it flimsily moved, suggesting it could not have possibly been built to brace the frame.

Thus, because Arctic Cat has not put forward clear and convincing evidence that the Mod's assembly "brace[d]" the frame, the Court will deny Arctic Cat's motion for partial summary judgment on the '847 patent on the basis of anticipation.

### 3. Obviousness

Finally, Arctic Cat argues the '847 innovations on the Mod's design were obvious. A patent is invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103.

Arctic Cat argues putting skis on the Mod was obvious, as was adding an "upper column" to the legs of the assembly so that the assembly-legs bend inward toward the apex. But again, Arctic Cat must show that all of the differences between the Mod and the '847 snowmobile were obvious, including the '847 patent's bracing of the frame. Arctic Cat never argues the "bracing" of the frame function of the assembly is obvious. The Court will therefore deny Arctic Cat's motion for summary judgment on the '847 patent on the basis of obviousness.

### D. CONCLUSION REGARDING THE '847 PATENT

In sum, the Court finds that Bombardier has met its burden in arguing that the exemplars infringe on the '847 patent, and Arctic Cat has not met its burden in arguing that the exemplars are not representative, or that the '847 patent is invalid. The Court

will grant summary judgment to Bombardier and deny summary judgment to Arctic Cat on the '847 patent.

## III.    THE '848 PATENT

Bombardier has not moved for summary judgment on its infringement claim regarding the '848 patent, however Arctic Cat's indefiniteness and invalidity arguments in its summary judgment motions do extend to the '848 patent, in addition to the '847 patent.  As mentioned above, the parties agree that their arguments apply equally to the '847 and '847 patents.  Therefore the Court will deny Arctic Cat's summary judgment motions as they pertain to the '848 patent for the reasons given above.

## IV.    THE '669 PATENT

Arctic Cat also moves for summary judgment on the '669 patent, arguing the '669 patent is invalid because it was anticipated and is indefinite.

On anticipation, Arctic Cat argues the '669 patent is anticipated by the Fox Trac. Bombardier highlights several claim limitations that it believes not to be present in the Fox Trac, beginning with Claim 88.  Claim 88 describes in relevant part "**a steering shaft** operatively connecting the two skis **to the steering device** for steering **the snowmobile**, wherein the steering shaft is **disposed over the engine** . . . and the steering position is disposed forward of the forward-most drive track axle."

Bombardier argues the Fox Trac's steering position is not "disposed over the engine," and the Court agrees.  Photographs submitted to the Court show that the Fox Trac has a steering wheel supported by a large "Y"- or "U"-shaped pole that then

connects to a steering shaft.  While the Fox Trac's actual steering wheel appears to be "disposed over the engine," the shaft is in front of the engine, not over it (*see* Warner Decl., Ex. A), and Claim 88 requires that the steering shaft – not the steering wheel – be over the engine.  Therefore Claim 88 is not present in the Fox Trac, and the Fox Trac does not anticipate the '669 patent.  The Court need not decide the parties' other anticipation arguments on the '669 patent, because as mentioned above, a party seeking to invalidate a patent on grounds of anticipation must show that "each and every" claim limitation in the patent is also present in the prior art. *Trintex Indus.*, 295 F.3d at 1295.

On indefiniteness, Arctic Cat argues the patent's claim limitation "seat position defined by the seat" is indefinite because it fails to provide objective boundaries for those skilled in the art.  In the Claim Construction Order, the Court construed the "seat position defined by the seat" claim limitation to mean  "a portion of the straddle-type seat positioned beneath the center of weight distribution of a 50th percentile North-American adult male weighing 78 kg and has the body build illustrated in FIGS. 9A, 9B and 10 seated in a natural operating position."  (Claim Construction Order at 35-36.)  Arctic Cat argues that the Court's construction failed to set out objective boundaries.  But even if true, Arctic Cat's argument misses the mark because it focuses entirely on the Court's construction of the claim limitation, rather than the claim limitation itself.  Indefiniteness arguments must target the text of the patent, not the text of the patent as construed by the Court.  *Cf. Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1379 (Fed. Cir. 2015) (basing an indefiniteness decision on the text of the claim).  After all, Arctic Cat is requesting that the Court hold the patent invalid, not the Claim Construction Order.  Even

if the Court's construction of the claim limitation were too ambiguous, that problem would not necessarily mean that the patent is too.

Perhaps Arctic Cat believes that the patent's actual "seat position defined by the seat" claim limitation is invalid, but Arctic Cat has not made that argument. All of the evidence Arctic Cat relies on pertains to the Court's construction of the claim and not to the claim's actual language. (*See*, *e.g.*, Decl. of Annamarie Daley, Ex. Q at 254:1-15, Mar. 27, 2016, Docket No. 2016 (discussing the construed claim, not the claim's actual language); Warner Decl., Ex. B at 56-74 (discussing the word "natural," a word found in the construed claim limitation but not in the literal text of the claim limitation).)

The Court will therefore deny Arctic Cat's summary judgment motion on the '669 patent.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

1.      Bombardier's Motion for Partial Summary Judgment of Infringement on Claims 1, 6, 7 and 8 of the 7,124,847 Patent [Docket No. 646] is **GRANTED**.

2.      Arctic Cat's Motion for Summary Judgment of Indefiniteness of the 7,124,847 and 7,124,848 Patent Claims [Docket No. 651] is **DENIED**.

3.      Arctic Cat's Motion for Summary Judgment that the Asserted Claims of BRP's U.S. Patent Nos. 7,124,847 and 7,124,848 are Invalid in View of T/S Racing Snowmobiles [Docket No. 674] is **DENIED**.

    4.      Arctic Cat's Motion for Summary Judgment on Certain U.S. Patent 7,213,669 Patent Counts [Docket No. 680] is **DENIED**.

    **IT IS FURTHER ORDERED** that the parties are to show cause on or before fourteen (14) days from the date of this Order why the Court should not unseal the Order and to specify any portion of the Order warranting redaction.

DATED:  December 29, 2016
at Minneapolis, Minnesota.

                             s/ John R. Tunheim
                              JOHN R. TUNHEIM
                              Chief Judge
                        United States District Court