# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| BOMBARDIER RECREATIONAL PRODUCTS, INC. and BRP U.S. INC., | Civil No. 12-2706 (JRT/LIB) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER DENYING POST-TRIAL MOTIONS** |
| v. | |
| ARCTIC CAT INC., and ARCTIC CAT SALES INC., | |
| Defendants. | |

Harry C. Marcus, Joseph Farco, and Robert K. Goethals, **LOCKE LORD LLP**, Three World Financial Center, New York, NY 10281, Kevin D. Conneely and Ruth A. Rivard, **STINSON LEONARD STREET LLP**, 50 South Sixth Street, Suite 2600, Minneapolis, MN 55402, for plaintiffs.

Aaron A. Myers, Diane L. Peterson, and Niall A. MacLeod, **KUTAK ROCK LLP**, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402, Frederick H. Davis, **KUTAK ROCK LLP**, 124 West Capitol Avenue, Suite 2000, Little Rock, AR 72201, and Jacob Song, **KUTAK ROCK LLP**, 5 Park Plaza, Suite 1500, Irvine, CA 92614, for defendants.

Plaintiffs Bombardier Recreational Products, Inc. and BRP U.S. Inc. (collectively "BRP") brought this patent-infringement action against Arctic Cat Inc. and Arctic Cat Sales Inc. (collectively "Arctic Cat"). BRP alleged that certain Arctic Cat snowmobiles (the "Accused Products") infringed two of its patents related to snowmobile frames: U.S. Patent No. 7,213,669 ("the '669 Patent") and U.S. Patent No. 7,124,847 ("the '847 Patent"). (Compl. ¶¶ 9-15, 30-36, Dec. 15, 2011, Docket No. 1; *see id.* ¶ 9, Ex. A ('847 Patent); *see id.* ¶ 30, Ex. D ('669 Patent)). The Court granted BRP summary judgment of

infringement with respect to the '847 Patent. (Mem. Op. & Order at 31, Dec. 29, 2016, Docket No. 781.) The issues for trial included whether Arctic Cat infringed the '669 Patent, whether Arctic Cat's infringement was willful, whether the asserted claims of BRP's patents were invalid, and damages. (*See* Verdict, Dec. 6, 2017, Docket No. 1071.)

After a three-week trial, the jury returned a verdict in Arctic Cat's favor. (J., Dec. 6, 2017, Docket No. 1072.) Although the jury found the '669 Patent infringed, it found all asserted claims of both the '669 and '847 Patents invalid. (*Id.*) The jury did not make any findings related to damages or willfulness, consistent with the Court's instructions. (*See* Verdict.)

BRP and Arctic Cat filed post-trial motions for judgment as a matter of law ("JMOL") and motions for a new trial on various grounds. (Defs.' Mot. for JMOL, Dec. 3, 2018, Docket No. 1094; Pls.' Mot. for New Trial, Jan. 3, 2018, Docket No. 1099; Pls.' Mot. for JMOL, Jan. 3, 2018, Docket No. 1102.) In general, Arctic Cat seeks JMOL that it does not infringe the '669 Patent, and BRP seeks JMOL that its patents are not invalid. Because the Court will find that sufficient evidence supported the jury's findings and that a new trial is not warranted on any ground, the Court will deny the parties' motions.

## DISCUSSION

## I.    STANDARD OF REVIEW

While Federal Circuit law governs substantive patent law, regional circuit law governs a district court's rulings on post-trial motions for JMOL and for a new trial. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1202 (Fed. Cir. 2010).

## A.    JMOL

Under Rule 50 of the Federal Rules of Civil Procedure, the Court may resolve an issue as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  "A motion for judgment as a matter of law should be granted when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party."  *Hunt ex rel. Hunt v. Lincoln Cty. Mem'l Hosp.*, 317 F.3d 891, 893 (8th Cir. 2003) (quoting *Neely v. Am. Family Mut. Ins. Co.*, 123 F.3d 1127, 1129 (8th Cir. 1997)).  In making this determination, the Court must:

> consider the evidence in the light most favorable to the prevailing party, assume that the jury resolved all conflicts of evidence in favor of that party, assume as true all facts which the prevailing party's evidence tended to prove, give the prevailing party the benefit of all favorable inferences which may reasonably be drawn from the facts, and deny the motion, if in light of the foregoing, reasonable jurors could differ as to the conclusion that could be drawn from the evidence.

*Minneapolis Cmty. Dev. Agency v. Lake Calhoun Assocs.*, 928 F.2d 299, 301 (8th Cir. 1991) (quoting *Atlas Pile Driving Co. v. Dicon Fin. Co.*, 886 F.2d 986, 989 (8th Cir. 1989)).  Because a Rule 50(b) motion constitutes a renewal of a Rule 50(a) motion made at the close of the evidence, a Rule 50(b) motion is limited to the issues raised in the Rule 50(a) motion.  *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 983-84 (8th Cir. 2008).

## B.    New Trial

The Court may grant a motion for a new trial "on all or some of the issues."  Fed. R. Civ. P. 59(a)(1).  "A new trial is appropriate when the first trial, through a verdict against

the weight of the evidence . . . or legal errors at trial, resulted in a miscarriage of justice." *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). "The authority to grant a new trial is within the discretion of the district court." *Id.* The Court may grant a new trial where erroneous rulings "had a substantial influence on the jury's verdict." *Littleton v. McNeely*, 562 F.3d 880, 888 (8th Cir. 2009) (quoting *Harris v. Chand*, 506 F.3d 1135, 1139 (8th Cir. 2007)). Only if the jury's verdict is so against the great weight of the evidence that it constitutes a miscarriage of justice should a motion for a new trial be granted. *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1010 (8th Cir. 2000).

## II.     INFRINGEMENT OF THE '669 PATENT

BRP argued at trial that Arctic Cat infringed claims 88 and 92-95 of the '669 Patent. At the close of BRP's case in chief, Arctic Cat moved for JMOL under Rule 50(a) that it did not infringe the '669 Patent. (Trial Tr. Vol. X at 2068:10-14, Jan. 2, 2018, Docket No. 1087.) The Court denied Arctic Cat's motion. (*Id.* at 2088:11-15.) The jury found claims 88 and 92-95 of the '669 Patent infringed. (Verdict at 1.) Now, Arctic Cat renews under Rule 50(b) its motion for JMOL that it does not infringe. Because BRP presented sufficient evidence from which the jury could have found by a preponderance of the evidence that Arctic Cat infringed claims 88 and 92-95 of the '669 Patent, and because the jury's verdict was not substantially influenced by any legal errors, the Court will deny Arctic Cat's motion for JMOL.

## A. Infringement Standard

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). To infringe, an accused product must "contain[] every claim limitation or its equivalent." *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016).

## B. Sufficiency of Evidence

Arctic Cat's primary noninfringement argument concerns the "seat position defined by the seat" limitation in claims 88 and 92-95 of the '669 Patent. There was sufficient evidence to support the jury's finding that the Accused Products include a "seat position defined by the seat." The Court construed "seat position defined by the seat" to mean "a portion of the straddle-type seat positioned beneath the center of weight distribution of a 50th percentile North-American adult male weighing 78 kg and has the body build illustrated in FIGS. 9A, 9B and 10 seated in a natural operating position." (Claim Const. Order at 35-36, Sept. 28, 2015, Docket No. 552.) BRP presented evidence, including expert testimony, that the Accused Products meet this claim limitation as construed. (*See, e.g.*, Trial Tr. Vol. V at 960:23-961:2, 969:16-19, 973:18-974:6, Jan. 2, 2018, Docket No. 1082; Trial Tr. Vol. VI at 1090:10-1091:18, Jan. 2, 2018, Docket No. 1083; Trial Tr. Vol. VII at 1501:2-1504:16, Jan. 2, 2018, Docket No. 1084.) Arctic Cat's argument that BRP never presented evidence of numerical measurements regarding the "seat position" (or the "center of weight distribution") are unavailing, as neither the asserted claims of the '669 Patent, nor the Court's construction of the "seat position" limitation require any numerical

measurements – unlike, for example, the limitations in claims 92-95 of the '669 Patent that recite numerical measurements for the location of the "steering position." (*See* '699 Patent at 21:57-22:3.) The Court will therefore deny Arctic Cat's motion for JMOL on this ground.[1]

## C. Certificate of Correction

Arctic Cat also argues that it is entitled to JMOL of no infringement of the '669 Patent because a certificate of correction issued with respect to the '669 Patent after this litigation started. Arctic Cat's position fails for two reasons.

First, Arctic Cat has waived this issue. Arctic Cat made this argument in one of its motions in limine (which the Court denied before trial), but Arctic Cat omitted this argument from its Rule 50(a) motion. (*See* Trial Tr. Vol. X at 2069:7-2073:2.) Although Arctic Cat did not need to renew its evidentiary objection at trial, *see* Fed. R. Evid. 103(b), it was required to include this argument in its Rule 50(a) motion to preserve it for its Rule 50(b) motion. "Indisputably, if an argument is raised in support of a motion *in limine*, the motion is *denied*, and the argument is not restated at the appropriate time, the argument is not preserved under Rules 50 or 51." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 488 (3d Cir. 1991); *see Hinz*, 538 F.3d at 983-84.

Second, Arctic Cat fails to engage the proper legal standard. Arctic Cat correctly states that whether a patentee may assert uncorrected claims depends on whether the

---

[1] The Court has considered Arctic Cat's remaining arguments regarding the sufficiency of BRP's evidence of infringement of the '669 Patent (accounting for pitch attitude, using CAD drawings and photographs, using exemplar snowmobiles, and using the patent's specification), and finds these arguments unpersuasive.

uncorrected claims "omit[] a material limitation . . . not evident on the face of the patent," *H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1335 (Fed. Cir. 2014). But Arctic Cat argues that the certificate of correction simply changed the scope of the asserted claims, not that the alleged errors are omitted material limitations not evident on the face of the patent.[2] Because the uncorrected claims of the '669 Patent do not omit material limitations not evident on the patent's face, the Court will deny Arctic Cat's motion for JMOL on this ground.[3]

## III.  INVALIDITY

At trial, Arctic Cat argued that the asserted claims of the '669 and '847 Patents are invalid on multiple grounds. The jury found the asserted claims invalid on some grounds, but not invalid on others. Arctic Cat and BRP cross-move for JMOL and a new trial on invalidity. The Court will address the parties' motions and arguments ground-by-ground for each patent.

---

[2] Arctic Cat appears to be confusing the standards for certificates of correction with reissued patents, which are distinct. *Compare* 35 U.S.C. § 254, *with id.* § 252. *See generally Intel Corp. v. Negotiated Data Sols., Inc.*, 703 F.3d 1360, 1364 (Fed. Cir. 2012) (discussing the differences between certificates of correction and reissued patents).

[3] Arctic Cat also moves conditionally for a new trial on the issue of infringement of the '669 Patent. For the same reasons that there was sufficient evidence to support the jury's finding that Arctic Cat infringed claims 88 and 92-95 of the '669 Patent, the jury's finding was not against the great weight of the evidence. A new trial on the issue of infringement of the '669 Patent is not warranted.

## A.     Invalidity Standard

Issued patents are presumed valid.  35 U.S.C. § 282.  An accused infringer asserting an invalidity defense must prove invalidity by clear and convincing evidence.  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

## B.     The '669 Patent

At trial, Arctic Cat argued that claim 88 is invalid for anticipation, and that claims 88 and 92-95 are invalid for enablement, indefiniteness, anticipation, and obviousness. (*See* Jury Inst. Nos. 23-28, Dec. 6, 2017, Docket No. 1064.)  At the close of Arctic Cat's case in chief, BRP moved for JMOL under Rule 50(a) that claims 88 and 92-95 of the '669 Patent are not invalid.  (Pls.' Mot. for JMOL, Dec. 2, 2017, Docket No. 1043; Pls.' Mot. for JMOL, Dec. 4, 2017, Docket No. 1058.)  The Court denied BRP's motions.  (*See* Minute Entry, Dec. 4, 2017, Docket No. 1061; Minute Entry, Dec. 1065, Dec. 5, 2017, Docket No. 1065.)  The jury found claims 88 and 92-95 of the '669 Patent invalid.  (Verdict at 2.)  Now, BRP renews its motion for JMOL under Rule 50(b) that claims 88 and 92-95 of the '669 Patent are not invalid.  Because Arctic Cat presented sufficient evidence from which the jury could have found by clear and convincing evidence that claims 88 and 92-95 of the '669 Patent are invalid, the Court will deny BRP's motion.  The Court will also deny Arctic Cat's motions related to invalidity of the '669 Patent.

### 1.     Enablement

The jury did **not** find that claims 88 and 92-95 are invalid for lack of enablement. Arctic Cat moves conditionally for a new trial in the event that the jury's invalidity finding with respect to the '669 Patent is later reversed or vacated, by this Court or on appeal.  The

Court will deny Arctic Cat's conditional motion on this ground because there was sufficient evidence to support the jury's finding.

"To be enabling, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." *MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012) (quoting *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)) (discussing 35 U.S.C. § 112, ¶ 1).[4]

Arctic Cat had the burden of proving by clear and convincing evidence that the '669 Patent lacks a "sufficiently full and clear description of the claimed invention," i.e., to enable "a person having ordinary skill in the art . . . to make and use the full scope of the claimed invention at the time the original patent application was filed," and to do so without "undue experimentation." (Jury Inst. No. 23.) Arctic Cat's enablement argument centered on the "seat position defined by the seat" limitation and the alleged errors contained in the '669 Patent's figures of an average male snowmobile rider. Although Arctic Cat's expert, Mr. Warner, testified that in his opinion a person having ordinary skill in the art ("PHOSITA") would not know how to make and use the invention in light of those alleged errors, BRP's expert, Dr. Raasch, testified to the contrary – that even in light of those alleged errors, a PHOSITA could make and use the invention by using a anthropomorphic dummy to approximate an average male rider to determine a "seat position." (Trial Tr. Vol. XII at 2680:6-2700:11, Jan. 2, 2018, Docket No. 1089 (Warner); Trial Tr. Vol. VI at

---

[4] The pre-AIA versions of the Patent Act apply here. *See generally In re Nuvasive, Inc.*, 842 F.3d 1376, 1380 n.3, 1381 n.4 (Fed. Cir. 2016)

1071:15-1079:11 (Raasch).)  The jury was free to reject Mr. Warner's testimony and credit

Dr. Raasch's testimony.  The Court will therefore deny Arctic Cat's motion on this ground.

### 2. Indefiniteness

The jury found that claims 88 and 92-95 of the '669 Patent are invalid as indefinite.

BRP moves for JMOL that those claims are not invalid for indefiniteness.  Because there

was sufficient evidence from which the jury could have found by clear and convincing

evidence that claims 88 and 92-95 of the '669 Patent are indefinite, the Court will deny

BRP's motion for JMOL on this ground.

Patent claims must be definite, that is, they must "particularly point[] out and

distinctly claim[] the subject matter which the applicant regards as his invention."  35

U.S.C. § 112, ¶ 2.  "[A] patent is invalid for indefiniteness if its claims, read in light of the

specification delineating the patent, and the prosecution history, fail to inform, with

reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus,*

*Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

Definiteness "is amenable to resolution by the jury where the issues are factual in

nature."  *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir.

2003).  For example, "factual determinations as to what one skilled in the art would have

understood at the time" should be resolved by the jury.  *Viva Healthcare Packaging USA*

*Inc. v. CTL Packaging USA Inc.*, 197 F. Supp. 3d 837, 857 (W.D.N.C. 2016); *see also*

*Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 525-28 (Fed. Cir. 2016)

(holding that the accused infringer's "extensive case on indefiniteness" did not warrant

reversal of the district court's decision on JMOL).  Indeed, as BRP admitted during this

litigation, "[i]ndefiniteness challenges are highly fact intensive, and rarely the proper subject for [resolution by the court]."  (Pls.' Opp. to Mot. for Summ. J. at 21, Apr. 25, 2016, Docket No. 719 (citing *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1118-19 (Fed. Cir. 2001)).)

Arctic Cat argued at trial that the limitation "seat position defined by the seat" rendered claims 88 and 92-95 of the '669 Patent indefinite.  Specifically, the jury was required to resolve the factual dispute about whether a PHOSITA would understand, with reasonable certainty, the scope of the "seat position defined by the seat" limitation, in light of (1) several errors contained in the specification of the '669 Patent, and (2) the phrase "natural operating position" contained in the Court's claim construction.

Construction of "seat position defined by the seat" was quite challenging.[5]  On the one hand, the patent specification explicitly defines "seat position" by referencing a "standard rider."[6]  Yet the claim language itself states that the seat position is "defined by the seat" – an unambiguous reference to the seat, not a rider.  During prosecution, the phrase "defined by the seat" was added to overcome a rejection by the examiner who reasoned that defining "seat position" in relation to the body of an unspecified rider would

---

[5] At claim construction, Arctic Cat did not formally seek invalidation for indefiniteness, so the Court did not make any findings or conclusions related to indefiniteness at that time.  (*See* Defs.' Opening Claim Const. Br. at 28, 36, Dec. 19, 2014, Docket No. 448.)

[6] The specification of the '669 Patent states that "[t]he inventors of the present invention define the term 'seat position' to point out particular positions on the snowmobile that are adapted to function as the seat position for a standard rider," that Figures "9A, 9B, and 10 illustrate the various dimensions of a standard rider," and that "[t]he dimensions of the standard rider are a 'ruler' by which the dimensions of the various embodiments of the snowmobile of the present invention are measured."  ('669 Patent at 5:42-56.)

*(footnote continued on next page)*

make it "impossible to determine the scope of the claim." (Claim Const. Order at 32 (citing JA 2571, 2605-06, Mar. 9, 2015, Docket No. 469)[7].) After a thorough review of the intrinsic evidence, the Court construed "seat position defined by the seat" to reference both the seat and the rider, and to reference a "standard rider" as pointed out by the inventors during prosecution. (*Id.* at 35-36.) The Court – adopting BRP's proposed construction – construed "seat position defined by the seat" as "a portion of the straddle-type seat," thereby referencing the seat, "positioned beneath the center of weight distribution of a 50th percentile North-American adult male weighing 78 kg and has the body build illustrated in FIGS. 9A, 9B and 10 seated in a natural operating position," thereby referencing a standard rider. (*Id.*)

At trial, Arctic Cat presented evidence that the figures of the standard rider in the '669 Patent contain numerous errors.[8] For example, Figure 9A contains total arm-length measurements of 78.2 cm, 42.8 cm, and 87.3 cm; but the sums of the sub-dimensions that comprise the arm lengths equal 80.2 cm, 71.7 cm, and 67.4 cm. (Defs.' App. ¶ 36, Ex. 36 (Trial Ex. D#1073) at 50, Feb. 19, 2018, Docket No. 1126.) Also in Figure 9A, the total height measurements are listed as 184.3 cm, 152.7 cm, and 199.7 cm; but the sums of the sub-dimensions that comprise the heights equal 188.1 cm, 174.7 cm, and 160.8 cm. (*Id.* at

---

[7] Citations to "JA" are to the parties' joint appendix filed during claim construction. (Docket Nos. 469-502.)

[8] During this litigation, two weeks after the claim-construction hearing, BRP sought a certificate of correction to correct "various mistranscriptions and omissions in the numbers representing dimensions in Figs. 9A, 9B, and 10." (Decl. of Niall A. MacLeod ¶ 3, Ex. 2, Oct. 16, 2017, Docket No. 899.) The Court excluded the Certificate of Correction from trial because BRP asserted only uncorrected claims of the '669 Patent. (Mem. Op. & Order at 8, Nov. 11, 2017, Docket No. 990.)

45.)  Arctic Cat presented expert testimony that the 42.8 cm total arm-length measurement is "wrong because it's supposed to be between the other two" (78.2 cm and 87.3 cm), as is the 152.7 cm total height measurement (supposed to be between 184.3 cm and 199.7 cm). (Trial Tr. Vol. XII at 2686:20:-2691:9.)

There was also testimony that the differences between the total measurements and the sum of the corresponding sub-dimensions make it difficult to know what the dimensions of a standard rider are, and that there is no way to know which dimension (the total number or the sum of the sub-dimensions) is the correct one without conducting a "massive research project."  (*Id.* at 2687:5-2688:11; *see also* Trial Tr. Vol. VI at 1125:9-1126:21 (testimony of BRP's expert that it would be a "difficult undertaking" to build an anthropomorphic dummy with the dimensions in Figures 9A, 9B, and 10 of the '669 Patent).)  And, there was testimony that the height measurement is a particularly important one in determining what a standard rider is.  (*See* Trial Tr. Vol. XII at 2685:13-2686:3.) Post-*Nautilus*, this evidence supports a finding that, because of the errors in the figures, a PHOSITA would not know what dimensions of a standard rider the inventors intended to incorporate into the definition of "seat position defined by the seat."  *See Dow Chem. Co. v. Nova Chem. Corp. (Canada)*, 803 F.3d 620, 634-35 (Fed. Cir. 2015) (holding that four methods of determining "slope of strain hardening coefficient" leading to different results rendered the claims invalid for indefiniteness); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1344-45 (Fed. Cir. 2015) (holding not clearly erroneous the district court's factual findings that three possible definitions of "molecular weight" rendered the claims invalid for indefiniteness).

Arctic Cat also presented evidence that the Court's construction of "seat position defined by the seat" – largely adopted from BRP's proposed construction – rendered claims 88 and 92-95 of the '669 Patent indefinite because a PHOSITA would not understand, with reasonable certainty, what a "natural operating position" is. For example, Joel Hallstrom, who worked in the snowmobile industry for almost forty years, testified that he has never heard the term "natural operating position" and that such a position does not exist for snowmobile riders. (Trial Tr. Vol. IX at 2021:2-2023:21, Jan. 2, 2018, Docket No. 1086.) Mr. Warner, Arctic Cat's technical expert, also testified that "there is no such thing as a natural operating position." (Trial Tr. Vol. XII at 2696:10-11.) Moreover, BRP's witnesses repeatedly testified that a "natural" position is one that is subjectively "comfortable" for the rider. (Trial Tr. Vol. VI at 1068:13, 1069:1, 1069:4, 1081:4, 1085:10, 1085:19, 1086:1; Trial Tr. Vol. XIV at 3210:12, Jan. 2, 2018, Docket No. 1091.) And "[c]omfort is different for every rider." (Trial Tr. Vol. VI at 1034:20; *see also* Trial Tr. Vol. XIII at 2945:24-2946:7, Jan. 2, 2018, Docket No. 1090.) This evidence supports a finding that the phrase "natural operating position" does not have "an established, sufficiently objective meaning in the art." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1260 (Fed. Cir. 2014). Because sufficient evidence supports the jury's finding that claims 88 and 92-95 of the '669 Patent are invalid for indefiniteness, the Court will deny BRP's motion for JMOL on this ground.

### 3. Anticipation

The jury found that claim 88 of the '669 Patent is invalid for anticipation. BRP moves for JMOL that claim 88 is not invalid for anticipation. Because there was sufficient

evidence from which the jury could have found by clear and convincing evidence that claim 88 is anticipated, the Court will deny BRP's motion for JMOL on this ground.

"A patent is anticipated under [35 U.S.C.] § 102 if '(a) the invention was known or used by others in this country . . . before the invention thereof by the applicant for patent, or (b) the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.'" *Minn. Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002) (quoting 35 U.S.C. § 102). "[A] prior art reference will anticipate if it 'disclose[s] each and every element of the claimed invention . . . arranged or combined in the same way as in the claim." *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1341 (Fed. Cir. 2016) (alterations and omission in original) (quoting *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009)).

There was sufficient evidence from which the jury could have found by clear and convincing evidence that claim 88 is anticipated by the prior-art Hetteen prototype snowmobile. First, there was sufficient evidence from which the jury could have found that the Hetteen prototype qualified as prior art. For a third-party device to qualify as prior art for public-use purposes, the device must be "accessible to the public." *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1334 (Fed. Cir. 2005). A third-party device may be in public use if the third party makes "no attempt to maintain confidentiality or to deliberately evade disclosure." *Id.* at 1335. "Even limited disclosure to those who are skilled enough to know, understand, and 'easily demonstrate the invention to others,'" can be an invalidating prior public use. *Dey, L.P. v. Sunovion Pharm., Inc.*, 715 F.3d 1351,

1355-56 (Fed. Cir. 2013) (quoting *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1321 (Fed. Cir. 2002)).

The Hetteen prototype was built by the late Edgar Hetteen, who also founded Arctic Cat. (Trial Tr. Vol. X at 2237:17-2238:11; 2240:23-2241:3.) Three witnesses testified about the prototype. Roger Skime, a close friend and colleague of Mr. Hetteen, testified that he was shown and drove the prototype on Mr. Hetteen's farm and alongside public roads during a visit to Mr. Hetteen's farm in the 1980-82 timeframe. (*Id.* at 2240:23-2242:13, 2284:7-2286:17.)[9] David Karpik testified that he too visited the Hetteen farm in the late 1990s, where he was shown the prototype. (Trial Tr. Vol. XI at 2506:16-2507:25, 2508:9-13, 2552:7-2553:16, Jan. 2, 2018, Docket No. 1088.) David Guenther, the current owner of the prototype, testified similarly: that he visited the Hetteen farm sometime in 2000, where he was shown the prototype. (Trial Tr. Vol. X at 2300-2314.) Guenther bought the prototype from Mr. Hetteen in 2000. (*Id.* at 2301:4-2302:11.)[10]

In addition to these witnesses' testimony, Arctic Cat presented the physical Hetteen prototype itself at trial. (Trial Tr. Vol. XI at 2501:20-23; *see also* Parties' Joint Ex. List, Dec. 5, 2017, Docket No. 1062 (admitting the Hetteen prototype into evidence as JTX-002).) The jury personally viewed the prototype and even asked a question during trial

---

[9] The priority date for the '669 Patent is November 26, 1999. (Jury Inst. No. 26.)

[10] Guenther's conduct in 2000 is after the priority date of the '669 Patent. Irrespective of whether Guenther's conduct can invalidate the '669 Patent – which neither party has addressed – Guenther's testimony was probative of whether the Hetteen prototype invalidates the '669 Patent and served to corroborate the testimony of Skime and Karpik. *See Transweb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1301 (Fed. Cir. 2016) ("The corroborating evidence can include . . . testimonial evidence.").

about certain stickers on the prototype's windshield and when those stickers were placed on it. (Juror Question to Witness, Dec. 1, 2017, Docket No. 1055.) Guenther testified that he put them on after he purchased the prototype. (Trial Tr. Vol. X at 2304:11-23.)

BRP argues that the Hetteen prototype does not qualify as prior art as a matter of law because Arctic Cat relies solely on uncorroborated witness testimony. BRP is correct that a single interested witness's uncorroborated testimony is legally insufficient to establish an invalidating prior public use. *Transweb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1301 (Fed. Cir. 2016); *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1366 (Fed. Cir. 1999). But Arctic Cat did not rely on only uncorroborated testimony about the Hetteen prototype: Arctic Cat presented the physical prototype itself to the jury, and Mr. Guenther testified that the prototype has remained substantially unchanged. (Trial Tr. Vol. X at 2303:6-2304:10.) The physical prototype, together with the testimony of Skime, Karpik, and Guenther, constitutes sufficient evidence from which a reasonable jury could have found that the Hetteen prototype is prior art. *Finnigan*, 180 F.3d at 1366 ("Mere testimony concerning invalidating activities is received with . . . skepticism because such activities are normally documented by tangible evidence **such as devices** . . . ." (emphasis added)).

Second, there was sufficient evidence from which the jury could have found that the Hetteen prototype includes each and every claim limitation of claim 88 of the '669 Patent. BRP argues that no reasonable jury could have found that the Hetteen prototype engine was disposed in front of the seat. But an image of the prototype clearly shows that a reasonable jury could have found that the engine of the Hetteen prototype is disposed in front of the seat. (*See* Decl. of Niall A. MacLeod ¶ 7, Ex. F at 4 (Trial Ex. D#1569), Jan.

3, 2018, Docket No. 1097.)  Moreover, Arctic Cat's technical expert, Mr. Warner, opined that the prototype's engine is disposed in front of the seat, explaining the difference between the prototype's engine and transmission.  (Trial Tr. Vol. XI at 2593:25-2604:15.) Therefore, the jury had sufficient evidence from which to find that claim 88 of the '669 Patent is anticipated by the Hetteen prototype.[11]

### 4.    Obviousness

While the jury did **not** find that claims 88 and 92-95 of the '669 Patent were invalid for obviousness, Arctic Cat maintains that claims 88 and 92-95 of the '669 Patent are invalid for obviousness as a matter of law, in light of the jury's finding that claim 88 of the '669 Patent is invalid for anticipation.  Specifically, Arctic Cat argues that the Court should amend the judgment pursuant to Rule 59(e) to include an obviousness finding because "anticipation is the epitome of obviousness."  *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983).  Alternatively, Arctic Cat seeks a new trial on obviousness.

A patent claim is invalid "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious" to a PHOSITA.  35 U.S.C. § 103; *see KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007); *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 3 (1966).

"Rule 59(e) motions serve the limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.'"  *Innovative Home Health Care v. P.T.-*

---

[11] Because the Court concludes that sufficient evidence supports a jury finding that the Hetteen prototype anticipates claim 88 of the '669 Patent, the Court need not decide whether there was sufficient evidence that any other prior-art snowmobile anticipates claim 88.

*O.T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8ᵗʰ Cir. 1998). The Court "has broad discretion to alter or amend a judgment under Rule 59(e)." *SFH, Inc. v. Millard Refrigerated Servs., Inc.*, 339 F.3d 738, 746 (8ᵗʰ Cir. 2003).

The problem for Arctic Cat is that it argued that only claim 88 of the '669 Patent is anticipated. (*See* Jury Inst. Nos. 25-26.) As such, the jury was instructed – without objection from Arctic Cat – that only claim 88 of the '669 Patent was subject to the Court's anticipation instruction. Thus, because the jury did not find claims 92-95 of the '669 Patent anticipated, Arctic Cat's argument is unavailing.[12]

Moreover, Arctic Cat is not entitled to a new trial on obviousness. There was substantial testimony from both BRP and Arctic Cat about modifications to the prior-art snowmobiles that would enable them to meet the limitations of claims 92-95 of the '669 Patent, the effect that such modifications would have on the prior-art snowmobiles, and whether a PHOSITA would be motivated to make such modifications. (*E.g.*, Trial Tr. Vol. XII at 2790:14-2792:1, 2796:11-2798:7 (modifications); Trial Tr. Vol. XIV at 3204:7-3205:10, 3184:3-3185:23 (modifications); Trial Tr. Vol. XIII at 3127:17-3129:6 (modifications); Trial Tr. Vol. XII at 2811:2-2812:7 (motivation); Trial Tr. Vol. XIII at 3118:11-3119:3, 3121:13-3122:2, 3129:8-15 (motivation); Trial Tr. Vol. XIV at 3185:24-3187:3 (motivation); *see also* Juror Question to Witness, Dec. 1, 2017, Docket No. 1056 (asking about the effect of adjusting the steering position on a prior-art snowmobile).)

---

[12] To the extent that Arctic Cat seeks to amend the judgment to include a finding that claim 88 of the '669 Patent is obvious in light of the jury's finding that claim 88 is anticipated, it is unclear what purpose such an amended judgment would serve.

Thus, the jury's finding that claims 92-95 of the '669 Patent are not invalid for obviousness was not against the great weight of the evidence.

### C.    The '847 Patent

At trial, Arctic Cat argued that claims 1 and 6 of the '847 Patent are invalid for anticipation, and that claims 1 and 6-8 are invalid for obviousness.[13]  (*See* Jury Inst. Nos. 25-28.)  At the close of Arctic Cat's case in chief, BRP moved for JMOL under Rule 50(a) that claims 1 and 6-8 are not invalid.  (Pls.' Mot. for JMOL, Dec. 4, 2017, Docket No. 1058.)  The Court denied BRP's motion.  (Minute Entry, Dec. 5, 2017, Docket No. 1065.) The jury found claims 1 and 6-8 of the '847 Patent invalid.  (Verdict at 2.)  Now, BRP renews its motion for JMOL under Rule 50(b) that claims 1 and 6-8 of the '847 Patent are not invalid.  Because Arctic Cat presented sufficient evidence from which the jury could have found by clear and convincing evidence that claims 1 and 6-8 of the '847 Patent are invalid, the Court will deny BRP's motion.

### 1.    Anticipation

The jury found that claims 1 and 6 of the '847 Patent are invalid for anticipation. There was sufficient evidence from which the jury could have found by clear and

---

[13] Arctic Cat also argued that claims 1 and 6-8 of the '847 Patent are indefinite, but the jury did **not** find them indefinite.  Arctic Cat conditionally moves for a new trial on indefiniteness in the event that the jury's invalidity finding with respect to the '847 Patent is later reversed or vacated, by this Court or on appeal.  Arctic Cat's argument here is that the term "pyramidal" is indefinite.  A new trial is not warranted.  There was sufficient evidence from which the jury could have found that Arctic Cat failed to prove by clear and convincing evidence that the term "pyramidal" is indefinite.  The Court will therefore deny Arctic Cat's motion on this ground.

convincing evidence that claims 1 and 6 of the '847 Patent are anticipated by the T/S Mod snowmobile.

First, there was sufficient evidence from which the jury could have found that the T/S Mod includes a "pyramidal brace assembly." The Court already determined at summary judgment that the T/S Mod included a "pyramidal" assembly; the issue for trial was whether the T/S Mod met the "brace" limitation. (Mem. Op. & Order ("Summ. J. Order") at 21 & n.6, 26-28, Dec. 29, 2016, Docket No. 781; Mem. Op. & Order at 6, Nov. 11, 2017, Docket No. 990.) Arctic Cat presented the physical T/S Mod to the jury. (*See* Parties' Joint Ex. List.) Also, Arctic Cat's technical expert, David Karpik, testified that the T/S Mod pyramidal assembly is "a brace," and explained that "anybody with common sense that would see that, if you put a tube between two points, that you are bracing something." (Trial Tr. Vol. XI at 2466:11-2467:10.) And the T/S Mod's creator, Steve Thorsen, testified that he called the legs of the pyramidal assembly "braces," he agreed that they left the frame "more rigid" and "brace everything," and he agreed that he could feel that they reduced "twist" when he grabbed the back of the T/S Mod. (*Id.* at 2400:7-2402:3, 2408:7-2410:2, 2411:7-11.)[14]

---

[14] Although the Court held that Arctic Cat was not entitled to summary judgment that the T/S Mod pyramidal assembly "braced" the frame viewing Thorsen's testimony in the light most favorable to BRP (Summ. J. Order at 26-28), at trial the jury was free to credit Thorsen's testimony, Karpik's expert testimony, and the jury's personal inspection of the T/S Mod.

*(footnote continued on next page)*

Second, there was sufficient evidence from which the jury could have found that the T/S Mod includes an "apex."[15]  The Court construed "apex" to mean "the uppermost part of the pyramidal brace assembly."  (Claim Const. Order at 15.)  Suffice it to say that, given that the jury had a sufficient basis to find that the T/S Mod included a pyramidal brace assembly, it also had a sufficient basis to find that such assembly included an "uppermost part."  BRP's argument that the T/S Mod lacks an "apex" because one of the four tubes of the T/S Mod's assembly is welded to the side of another tube rather than at the steering bracket was an argument for the jury.

Third, there was sufficient evidence from which the jury could have found that the "upper column" limitation was met.[16]  For example, there was evidence, drawn from the prosecution history of the '847 Patent, that the "upper column" limitation was admitted prior art, (Trial Tr. Vol. I at 195:3-196:24, Jan. 2, 2018, Docket No. 1078; Trial Tr. Vol. XI at 2425:16-21, 2468:11-2470:16); that a prior-art snowmobile contained an upper column, (Defs.' App. ¶ 29, Ex. 29 (Trial Ex. D#964); Trial Tr. Vol. XI at 2470:1-2473:4); and that upper columns were common snowmobile components before the subject matter of the '847 Patent was invented (Trial Tr. Vol. XI at 2502:14-2505:10).

---

[15] The "apex" limitation appears in claim 6 of the '847 Patent, but not in claim 1.

[16] The "upper column" limitation appears in claims 7 and 8 of the '847 Patent, but not in claims 1 or 6.  Arctic Cat did not argue that claim 7 or 8 is anticipated.  (*See* Jury Inst. No. 25-26.)  Nevertheless, the Court will address BRP's argument, as the "upper column" limitation is relevant to the jury's obviousness finding.

*(footnote continued on next page)*

Fourth, there was sufficient evidence from which the jury could have found that the T/S Mod is in fact a "snowmobile" with "skis."[17] Photographs of the T/S Mod clearly show that the jury was free to so find. (Defs.' App. ¶ 6, Ex. 6 (Trial Ex. D#269).) BRP's arguments that the T/S Mod was an 'oval ice racer,' and not a 'snowmobile,' were for the jury.[18]

## 2. Obviousness

The jury found by clear and convincing evidence that claims 1 and 6-8 of the '847 Patent are invalid for obviousness. BRP seeks a new trial on obviousness because of alleged errors in both the jury instructions and the special-verdict form.

---

[17] In its post-trial briefing, BRP implies that the Court shirked its claim-construction responsibility with respect to the "snowmobile" and "skis" limitations. (Defs.' Mem. at 33 & n.5, Jan. 3, 2018, Docket No. 1104.) BRP's complaint is that the Court declined to construe those terms at summary judgment – almost two years after claim construction. (*Id.*) At claim construction, the parties requested that the Court construe nearly 20 terms in the '847 Patent and 11 terms in the '669 Patent. (Joint Claim Const. Statement, Ex. B, Sept. 22, 2014, Docket No. 360.) Although "skis" made the parties' initial list, "snowmobile" did not. (*Id.*) The Court ordered the parties to limit their briefing and argument to "ten representative claim terms, phrases or clauses." (Order, Sept. 25, 2014, Docket No. 362; *see, e.g.*, N.D. Ill. LPR 4.1(b) (limiting by local patent rule the number of claim terms the court will construe to ten).) Neither "snowmobile" nor "skis" was on the parties' revised list of ten terms requiring construction. (Joint Claim Const. Statement, Nov. 11, 2014, Docket No. 432.) BRP could have insisted to Arctic Cat during the meet-and-confer process that it would seek construction of "snowmobile" and "skis" and could have made necessary concessions to effectuate that result. But BRP did not. The Court recognizes that it may be difficult to predict how failing to seek construction of a certain claim term will affect the ultimate outcome of a patent-infringement action. *See, e.g.*, *Arctic Cat, Inc. v. Bombardier Recreational Prods. Inc.*, No. 12-2692, 2018 WL 654218, at *4 (D. Minn. Jan. 2, 2018) (granting the accused infringer summary judgment of noninfringement after the parties failed to seek construction of a key claim term).

[18] Because the Court finds that sufficient evidence supports a jury finding that the T/S Mod anticipates claims 1 and 6 of the '847 patent, the Court need not decide whether there was sufficient evidence that any other prior-art snowmobile anticipates claims 1 and 6.

### a.    Jury Instructions

Jury instructions "viewed on the whole," should "fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." *Klisch v. Meritcare Med. Grp., Inc.*, 134 F.3d 1356, 1358 (8th Cir. 1998). How the Court crafts jury instructions is within the Court's sound discretion. *Reed v. Malone's Mech., Inc.*, 765 F.3d 900, 907 (8th Cir. 2014). Challenges to jury instructions must be reviewed in the context of the overall instructions, not just a single word or sentence. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1331 (Fed. Cir. 2010). In crafting jury instructions, "[t]he district judge need not use any particular form of words or sequence of ideas so long as the charge as a whole conveys to the jury a clear and correct understanding of the applicable substantive law without confusing or misleading them." 9C Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2556 (3d ed. 2017) (footnote omitted). "It is axiomatic that the trial court should charge the jury in plain language. It should not use technical or obscure legal phrases if the legal rule can be stated in less formal words." *Id.* An error in jury instructions justifies a new trial "only if the error 'misled the jury or had a probable effect on its verdict.'" *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013) (quoting *E.I. du Pont de Nemours & Co. v. Berkley & Co.*, 620 F.2d 1247, 1257 (8th Cir. 1980)).

Here, the Court instructed the jury that it "should" consider objective indicia of non-obviousness in making its obviousness determinations. (Jury Inst. Nos. 27-28.)[19] BRP contends that the jury should have been instructed that it "must" consider objective indicia of non-obviousness because such considerations are mandatory.

Much ink has been spilt over whether "'should' always has a permissive rather than mandatory, meaning." *Bord v. Rubin*, No. 97-6401, 1998 WL 420777, at *4 (S.D.N.Y. July 27, 1998). Quite simply, context matters. *Id.*; *see Montgomery*, 462 F.3d at 1070 ("[U]se of the word 'should' is not unambiguous and must be read in context."). BRP's argument – that "should" is permissive – has more traction in the context of statutes and contracts: words written by lawyers, argued over by lawyers, and interpreted by lawyers. *See McDonnell Douglas Corp. v. Islamic Republic of Iran*, 758 F.2d 341, 347 (8th Cir. 1985). *But see United States v. Montgomery*, 462 F.3d 1067, 1069-70 (9th Cir. 2006) (holding that the word "should" in a prior Ninth Circuit opinion described a mandatory act, not a permissive one). Here, however, in the context of jury instructions, "should" sufficiently conveyed to the members of the jury (none of whom were lawyers) the

---

[19] The Court's use of "should" in its instruction on objective indicia of non-obviousness was consistent with both the 2016 version of the Federal Circuit Bar Association's Model Patent Jury Instructions, *see* Fed. Cir. Bar Ass'n, *Model Patent Jury Instructions* 50 (2016) ("In making these assessments, you **should** take into account any objective evidence (sometimes called 'secondary considerations') that may shed light on the obviousness or not of the claimed invention, . . ." (emphasis added)), and the January 2018 version of the Northern District of California's Model Patent Jury Instructions, *see* U.S. Dist. Ct., N.D. Cal, *Model Patent Jury Instructions* 37 (2018) ("Finally, you **should** consider any of the following factors that you find have been shown by the evidence . . . . Although you **should** consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you." (emphases added)).

*(footnote continued on next page)*

purportedly mandatory nature of their consideration of objective indicia of non-obviousness. Indeed, the Eighth Circuit has held that it is not an abuse of discretion to instruct a jury that it "should" consider something, when the underlying substantive law suggests that that something "must" be considered. *Klisch*, 134 F.3d at 1358-59.[20]

BRP does not cite to any authority holding that it is legal error (and not harmless) to instruct a **jury** that it "should" consider something, rather than that it "must." Rather, all of the Federal Circuit authority that BRP cites concerns a **court's** finding of obviousness or non-obviousness, not a jury's.[21]

Even if it was error for the Court to use "should" rather than "must," such error was harmless – it neither misled the jury nor had a probable effect on the verdict. *See Hallmark Cards, Inc*, 703 F.3d at 460. First, the word "should" did not mislead the jury, given its use in context. Second, using "should" instead of "must" did not have a probable effect on

---

[20] Had the Court used "may" instead of "should," BRP might be entitled to a new trial. *Cf. Risdal v. Halford*, 209 F.3d 1071, 1071-72 (8th Cir. 2000) (holding in a § 1983 case that it was legal error to instruct jury that it "may" award nominal damages if the jury found a constitutional violation, instead of that it "must").

[21] In the cases that BRP cites, the district courts made obviousness/non-obviousness determinations at summary judgment, after a bench trial, or at JMOL. *Millennium Pharm., Inc. v. Sandoz Inc.*, 862 F.3d 1356 (Fed. Cir. 2017) (bench trial); *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034 (Fed. Cir. 2016) (JMOL); *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063 (Fed. Cir. 2012) (bench trial); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340 (Fed. Cir. 2012) (JMOL); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000) (bench trial); *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358 (Fed. Cir. 1998) (summary judgment); *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476 (Fed. Cir. 1997) (JMOL); *Cable Elec. Prod., Inc. v. Genmark, Inc.*, 770 F.2d 1015 (Fed. Cir. 1985), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358 (Fed. Cir. 1999) (summary judgment); *Simmons Fastener Corp. v. Ill. Tool Works, Inc.*, 739 F.2d 1573 (Fed. Cir. 1984) (bench trial); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530 (Fed. Cir. 1983) (bench trial).

*(footnote continued on next page)*

the outcome. At best for BRP, "the term 'should' . . . connote[d] a strong suggestion," *Montgomery*, 462 F.3d at 1069, meaning that it was highly probable that the jury considered objective indicia of non-obviousness.[22]

### b.  Special-Verdict Form

The use, form, and contents of a special-verdict form are within the trial court's discretion. *See SEC v. Capital Sols. Monthly Income Fund, LP*, 818 F.3d 346, 354 (8th Cir. 2016). As long as the special-verdict form "accurately, adequately, and clearly state[s] the relevant issues" to be decided, courts will be deemed to have properly exercised their discretion. *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 701 (7th Cir. 2007).

BRP proposed using a special-verdict form that would have asked the jury (1) whether each individual claim was invalid, (2) if so, the ground(s) for each claim found invalid, and (3) the particular prior art used for each ground of invalidity. (Pls.' Proposed Special Verdict Form at 2-4, Oct. 16, 2017, Docket No. 884.) The Court, however, favoring simplicity, used a form that asked simply whether all the asserted claims of each patent were invalid, and on what grounds. (*See* Verdict at 2-3.)

BRP argues that it is entitled to a new trial because the special-verdict form asked whether the jury found "all" the asserted claims invalid, rather than on a claim-by-claim

---

[22] In fact, the jury very likely took objective indicia of non-obviousness into account in making its obviousness determinations. The jury found claim 88 of the '669 Patent anticipated, but did not find claims 92-95 of the '669 Patent obvious – and those claims depend from claim 88. That the jury found independent claim 88 anticipated and dependent claims 92-95 not obvious strongly suggests both that the jury considered objective indicia of non-obviousness. The logical inference, then, is that with respect to the '847 Patent, the jury there too considered objective indicia of non-obviousness, but found claims 1 and 6-8 of the '847 Patent obvious nevertheless.

basis. BRP argues that the form was prejudicial because the jury would give "less scrutiny and/or weight" to the dependent claims than to the independent claims. (Pls.' Mem. at 17, Jan. 3, 2018, Docket No. 1101.) First, BRP cites no authority supporting its argument that a simpler form like the one the Court used caused BRP sufficient prejudice to justify a new trial, or frankly any prejudice at all. Second, to the extent that any such prejudice occurred as a result of the structure of the special-verdict form, the Court's instructions eliminated (or at least substantially mitigated) any such prejudice. (*See* Jury Inst. No. 23 ("Each claim is effectively treated as if it were a separate patent."); Jury Inst. No. 27 ("In determining whether the claimed invention was obvious, you **must** consider each claim separately." (emphasis added)); *see also* Jury Inst. No. 15 (describing the difference between independent and dependent claims).) BRP is not entitled to a new trial on obviousness.

## IV. DAMAGES AND WILLFULNESS

The jury did not make any findings related to damages or willfulness, consistent with the instructions on the special-verdict form. (*See* Verdict at 3.) Because the Court's rulings on the parties' motions does not result in a finding of liability by Arctic Cat for infringement of a valid patent claim, a new trial on damages and willfulness is not warranted. If after any further proceedings, however, there is a finding of liability by Arctic Cat for infringement of a valid patent claim, then BRP would be entitled to a new trial on damages and willfulness.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Defendants' Renewed Motion for Judgment as a Matter of Law; Motion to Alter/Amend the Judgment for Obviousness; and Conditional Rule 59 Motion for New Trial [Docket No. 1094] is **DENIED**.

2.     Plaintiffs' Motion for a New Trial [Docket No. 1099] is **DENIED**.

3.     Plaintiffs' Renewed Motion for Judgment as a Matter of Law under Rule 50(b) [Docket No. 1102] is **DENIED**.


DATED:  August 7, 2018                          _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                           JOHN R. TUNHEIM
                                                              Chief Judge
                                                 United States District Court